UNITED STATES, Appellee

v.

David DIAZ, Seaman, U.S.
Navy, Appellant.

No. 93–5008.
CMR No. 92–1270.

U.S. Court of Military Appeals.

Argued Feb. 2, 1994.

Decided Sept. 16, 1994.

For Appellant: *Lieutenant William M. Schrier*, JAGC, USNR (argued); *Lieutenant Michael C. Pallesen*, JAGC, USNR (on brief).

For Appellee: *Lieutenant D.K. Herlihy*, JAGC, USNR (argued); *Colonel T.G. Hess*, USMC, *Commander S.A. Stallings*, JAGC, USN, *Lieutenant Mary Grace McAlevy*, JAGC, USNR (on brief).

*Opinion of the Court*

WISS, Judge:

1. This case asks us to consider the legal effect on findings that flows from a convening authority's action affirming the sentence as adjudged without mentioning the findings.

*See* Art. 60(c)(2) and (3), Uniform Code of Military Justice, 10 USC § 860(c)(2) and (3) (1983). The issue arises in a context in which the written recommendation of the staff judge advocate (SJA) had not mentioned findings of the two Additional Charges and their specifications of which appellant had been convicted.

Now, we hold that, in the absence of contrary evidence, a convening authority who does not expressly address findings in the action impliedly acts in reliance on the statutorily required recommendation of the SJA, *see* Art. 60(d)(1983), and thus effectively purports to approve implicitly the findings as reported to the convening authority by the SJA. Accordingly, to the extent that that recommendation misstates the findings adjudged, the action taken in reliance thereon is in error; and the ensuing review by the Court of Military Review as to any affected specification is a nullity. *United States v. Depew*, 35 MJ 235 (CMA 1992) (summary disposition).

I

Pursuant to appellant's negotiated guilty pleas, a special court-martial composed of a military judge sitting alone convicted him of unauthorized absence (3 specifications—2 days, 4 days, and 6 months), failure to obey a lawful order, wrongful use of cocaine, and breaking restriction, *see* Arts. 86, 92, 112a, and 134, UCMJ, 10 USC §§ 886, 892, 912a, and 934, respectively. One other specification of unauthorized absence (specification 3 of Charge I) was dismissed by the military judge as duplicitous with specification 2 of the same charge. (R. 27.) The military judge sentenced appellant to a bad-conduct discharge, confinement for 120 days, forfeiture of $250.00 pay per month for 4 months, and reduction to the lowest enlisted grade.

2. In his post-trial recommendation, the SJA summarized in detail the charges and specifications, as well as the pleas and findings. Inexplicably, however, he omitted any reference at all to Additional Charges I and II and their specifications (alleging an unauthorized absence and a breach of restriction)

despite the fact that appellant had been found guilty of each pursuant to his pleas. The SJA concluded by advising that "[n]o corrective action on the findings or sentence is considered warranted" and by "recommend[ing] that the sentence be approved in its entirety...." Special Court–Martial (SPCM) Order No. 6–92, dated May 15, 1992, reflects that the convening authority followed this recommendation by approving the sentence; he did not expressly mention the findings at all.

Five days later, a "corrected copy" of SPCM Order No. 6–92 was promulgated.[1] A caption at the top explained: "Due to an administrative error, the original court-martial promulgating order did not reflect the 2 Additional Charges. The convening authority's action was not affected." As suggested, this corrected order did indeed reflect Additional Charges I and II and their specifications; it also, however, erroneously indicated that appellant had pleaded guilty to and had been found guilty of specification 3 of Charge I, which, as we noted earlier, the military judge had dismissed.

3. The Court of Military Review divided on the question of what impact on the case flowed from these errors in an unpublished opinion dated December 17, 1992. As to the SJA's omission in his recommendation, a majority treated the problem as limited to the integrity of the recommendation itself, found that appellant's lack of objection to any error waived appellate complaint, and concluded in any event that the omission was harmless. The majority, however, did order a corrected promulgating order to reflect that specification 3 of Charge I had been dismissed. Over a year and a half has passed, and still no corrected order has been provided.

Senior Judge Freyer, in dissent, viewed the SJA's omission as impacting beyond the

recommendation. After a detailed historical review of the statutorily changing role of the convening authority's post-trial action, Senior Judge Freyer concluded that, when a convening authority does not make specific reference in the post-trial action to the adjudged findings, as a matter of law the convening authority approves the findings as they were reported to him in the recommendation.[2] Since the recommendation in this case had failed to mention two of the findings of guilty, the convening authority as a matter of law had not approved them, so the Court of Military Review lacked jurisdiction to review them. See Art. 66(c), UCMJ, 10 USC § 866(c). Therefore, Senior Judge Freyer concluded that a new recommendation and action were required as a predicate to that court's appellate review.

4. Senior Judge Freyer relied on this Court's summary disposition in *United States v. Depew, supra,* and he expressed concern over a decision by the Court of Military Review after *Depew, see United States v. McConnell,* 36 MJ 552 (NMCMR 1992), that was not consistent with his construction of our precedent. He concluded by observing: "Although the implications of *United States v. Depew* seem clear enough to me, the issue of what findings a convening authority is deemed to approve under the Military Justice Act of 1983, and why, is too controversial and important to be left to implication." Unpub. op. at 5. Accordingly, he forthrightly urged fuller explication by this Court of the rationale of *Depew* so as to calm these waters.

Apparently taking up Senior Judge Freyer's suggestion, the Acting Judge Advocate General of the Navy certified the following question of law to this Court, see Art. 67(a)(2), UCMJ, 10 USC § 867(a)(2) (1989):

1. The corrected order is erroneously dated differently from the original order. A corrected order is the order previously issued with corrections. The date of the order is the date of the Action, which had not changed.

2. Actually, Senior Judge Freyer's initial position was that an action that fails to mention findings does not, in law, approve *any* findings. Acknowledging that repercussions of this conclu-

sion are "unacceptably dire" in light of Article 66(c), Uniform Code of Military Justice, 10 USC § 866(c), unpub. op. at 2–3, he then proceeded to consider: Assuming *some* findings are approved by such an action, are such findings as they were adjudged or as they were related in the staff judge advocate (SJA)'s recommendation? Unpub. op. at 3.

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW CORRECTLY HELD THAT A CONVENING AUTHORITY'S ACTION APPROVING ONLY THE SENTENCE IMPLICITLY APPROVED THE FINDINGS ADJUDGED BY THE COURT–MARTIAL, EVEN WHERE, AS IN THIS CASE, REFERENCE TO ADDITIONAL CHARGES I AND II WERE OMITTED FROM THE STAFF JUDGE ADVOCATE'S RECOMMENDATION; OR WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW SHOULD HAVE FOLLOWED THE RULE WHICH COULD BE IMPLIED FROM THE COURT OF MILITARY APPEALS' SUMMARY DISPOSITION IN *UNITED STATES V. DEPEW*, 35 MJ 235 (CMA 1992), THAT A CONVENING AUTHORITY'S ACTION NOT EXPRESSLY APPROVING ANY FINDINGS CONSTRUCTIVELY APPROVES ONLY THE FINDINGS OF GUILTY CORRECTLY IDENTIFIED FOR APPROVAL IN THE STAFF JUDGE ADVOCATE'S RECOMMENDATION, AND PRECLUDES ARTICLE 66 REVIEW OF THE FINDINGS OF GUILTY OMITTED FROM THE STAFF JUDGE ADVOCATE'S RECOMMENDATION.

As indicated at the outset, we now answer this question in a manner that is consistent with *Depew* and its logical implications.

## II

5. Since appellant relies so heavily in this Court on the dissenting opinion below of Senior Judge Freyer, which, in turn, relied so heavily on *Depew*, it is appropriate at the outset of our analysis of this issue to consider the Government's overt challenge to the precedential quality of that case as a summary disposition.

▮▮▮ Presently there is no rule among the Rules of Practice and Procedure of this Court that instructs counsel to what extent they may argue a summary disposition of

this Court as precedent in deciding a subsequent appeal in a different case.[3] In the absence of a rule that restricts counsel from pointing our attention to a prior summary disposition of this Court, the Government's argument in effect is that such a disposition, while binding on the appeal of the case in question, somehow takes on the character of *invisibility* when similar issues are considered in other cases by this Court, Courts of Military Review, and military judges at courts-martial.

6. At the same time, we recognize that this Court, in other instances, has profited from guidance offered in prior summary dispositions, *see, e.g., United States v. Smith*, 34 MJ 247, 249 (CMA 1992), *citing United States v. Avery*, 34 MJ 160 (CMA 1991) (summary disposition); *United States v. McCallister*, 27 MJ 138 (CMA 1988), *citing United States v. Harvey*, 23 MJ 280 (CMA 1986) (summary disposition). As well, the Supreme Court of the United States instructed in *Hicks v. Miranda*, 422 U.S. 332, 344–45, 95 S.Ct. 2281, 2289–90, 45 L.Ed.2d 223 (1975), that "lower courts are bound by summary decisions by" that Court.

Nonetheless, the Government advances several reasons for contrary treatment as precedent. Clearly it is true that recitation of the facts and analysis of the law often are abbreviated in summary dispositions. To the extent that they include any such recitation or analysis, however, they would seem to be useful. Rarely does a case on appeal perfectly overlay, in facts and relevant legal principles, a case found in precedent—even one which is the subject of a full-blown opinion of the Court; instead, analogies are drawn, and distinctions are made. If something is "missing" from a precedent opinion, that point invariably is argued by the lawyers regarding the weight we should give that precedent in deciding a case then before us. The precedent, however, does not seemingly vanish like a magician's rabbit, simply because of its abbreviated character, and the

---

3. The question whether the Court should promulgate such a rule presently is under study by the

Court's Rules Advisory Committee.

same might logically be said of summary dispositions.

7. Equally accurate is the observation that summary dispositions sometimes are reached without benefit of full appellate advocacy. That is not at all to say, however, that they are reached casually, without legal cogitation. If, in subsequent litigation in which a summary disposition is urged as helpful, a party believes that fuller rumination following hard-hitting advocacy would lead to a different conclusion, then that party is free to urge such a belief in the context of arguing what weight should be accorded the summary disposition. It is one thing for counsel to urge that, given the benefit of the impressive arguments that counsel is about to offer the Court, the summary disposition should not control or should be treated lightly. It is quite another thing for counsel to assert that what is there is not.[4]

In any event, we need not finally decide here the extent to which, in the future, counsel may resort to summary dispositions and we may find comfort in them, *see* note 3, *supra.* Our answer of the certified question in this case is not inconsistent with the summary disposition in *Depew,* and neither do we blindly rely upon it; instead, our decision here rests on the reasoning set forth below.

### III

#### A

8. Prior to enactment of the Military Justice Act of 1983, Pub.L.No. 98–209, 97 Stat. 1393, the convening authority's post-trial responsibility was quite broad. Article 64, UCMJ, 10 USC § 864, 70A Stat. 58 (1956), instructed:

> In acting on the findings and sentence of a court-martial, the convening authority may approve only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law and fact and as he in his discretion determines should be approved. Unless he indicates otherwise, approval of the sentence is approval of the findings and sentence.

In turn, Article 66(c) limited the scope of review by the Court of Military Review "to the findings and sentence as approved by the convening authority."

During consideration of the 1983 amendments to the Code, however, Congress was mindful of the cumbersome aspects of the legal review that then-Article 64 required of the convening authority and was mindful, particularly, of the fertile field for appellate litigation in connection with the post-trial review of the SJA under then-Article 61, UCMJ, 10 USC § 861. The House of Representatives' report on that legislation "emphasize[d] that ... [the convening authority's post-trial] role primarily involves a determination as to whether the sentence should be reduced as a matter of command prerogative (*e.g.,* as a matter of clemency) rather than a formal appellate review." H.Rep.No. 549, 98th Cong., 1st Sess. 15 (1983) U.S.Code Cong. & Admin.News pp. 2177, 2180, 2181; *see also* S.Rep.No. 53, 98th Cong., 1st Sess. 17–21 (1983). Accordingly, the post-trial responsibilities of the convening authority and his SJA were altered significantly in 1983.

9. Now, as a predicate to the convening authority's action, the SJA simply provides a "written recommendation" which contains only "such matters as the President may prescribe by regulation." Art. 60(d), UCMJ, 10 USC § 860(d), 97 Stat. 1395 (1983). RCM 1106(d), Manual for Courts–Martial, United States, 1984, reflects the President's decision in this respect. Admonishing that the recommendation is to be "concise," *see* RCM 1106(d)(2), the President has listed a minimum of "[r]equired contents" and has authorized whatever additional "[o]ptional matters" that are "deemed appropriate by the staff judge advocate." RCM 1106(d)(3) and (5).

Consistent with Congress' intent, the President has acknowledged that "[t]he purpose of the recommendation ... is to assist the convening authority to decide what action to take on the sentence in the exercise of command prerogative." RCM 1106(d)(1). Therefore, "[t]he staff judge advocate or le-

---

4. Unlike some other court systems, the decisions of this Court, whether summary or otherwise, are fully reported by West Publishing Company in the Military Justice Reporter.

gal officer is not required to examine the record for legal errors," though he must respond to any suggestion of legal error that is raised by the accused and must state whether, in his opinion, corrective action is required. Even in this context, though, "[a]n analysis or rationale" in response to an accused's allegation of legal error "is not required"—only "a statement of agreement or disagreement." RCM 1106(d)(4).

10. As to the ensuing action of the convening authority, Article 60(c)(1) (1983) makes clear: "The authority under this section to modify the findings and sentence of a court-martial is a matter of command prerogative," not one of legal-review responsibility. Based on the SJA's written recommendation, the convening authority now is required only to take "[a]ction on the sentence of a court-martial" to "approve, disapprove, commute, or suspend the sentence in whole or in part." Art. 60(c)(2) (1983). "Action on the findings of a court-martial by the convening authority or other person acting on the sentence is not required," but he may set aside or modify a finding of guilty "in his sole discretion." Art. 60(c)(3) (1983). *See* RCM 1107 (**Action by convening authority**).

While making these substantial changes in the post-trial responsibilities of the SJA and the convening authority, however, Congress did not modify in any respect Article 66, which addresses appellate review by a Court of Military Review. Specifically, although a convening authority now is free from the burden of reviewing the legal correctness of findings of guilty and now is required only to act on the *sentence*, a Court of Military Review "may act only with respect to the *findings and sentence as approved by the convening authority.*" Art. 66(c) (emphasis added).

11. We are required, though, to construe a statute *in toto* in a manner so as to make sense of it. In this light, the unamended linkage in Article 66(c) between the authority of the Court of Military Review to review approved findings and sentence, on the one hand, and approval by the convening authority of findings and sentence, on the other, necessarily implies this rationale:

While a convening authority no longer is required expressly to act on findings, he is not restricted from doing so. *See generally* Art. 60(c)(3) (1983) ("Action on the findings ... is not required."); RCM 1107(c) ("Action on the findings is not required."). Indeed, he statutorily is authorized to set aside a finding of guilty or to modify a finding to one of a lesser-included offense. *See* Art. 60(c)(3) (1983). Moreover, the President apparently contemplates that, while the SJA no longer needs to search the record for legal error, any legal error of which he is made aware will be redressed through "corrective action" by the convening authority. *See* RCM 1106(d)(4). Accordingly, when a convening authority expressly approves only the sentence in his action, he implies a decision to approve the findings, as well. *See generally* RCM 1107(f)(3), Discussion ("No express action is necessary to approve findings of guilty.").

In other words, since he has the *authority* to affect the findings in his discretion and since he may be *expected* to do so in certain circumstances, his failure to make any mention of findings in his action silently implies a decision to approve them. This construction of the convening authority's role as to findings is fairly within the statutory scheme and is necessary in order to make sense of the statutory predicate for the appellate authority of the Court of Military Review under Article 66(c).

B

12. The question arises here, however: *What* findings did the convening authority impliedly approve? It reasonably could be argued that he approved the findings as they were adjudged. After all, his discretion to affect findings is keyed to those that were adjudged—he may only set them aside or change them to guilty of a lesser-included offense, but he may not purport to approve a guilty finding that was not adjudged. *See* Art. 60(c)(3)(A) and (B) (1983); RCM 1107(c)(2) and (1).

On the other hand, the convening authority no longer is required himself to

review the record of trial, though he may do so. *See generally* RCM 1107(b)(1) ("The convening authority is not required to review the case for legal errors or factual sufficiency."); RCM 1107(b)(3)(B) (*"Additional matters.* Before taking action the convening authority may consider: (i) The record of trial; ..."). Indeed, except to the extent that it is necessary in order to retrieve the required information for the recommendation, even the SJA no longer is required to do so. *See generally* RCM 1106(d)(4) ("The staff judge advocate or legal officer is not required to examine the record for legal errors."). Thus, there presently is no statutory or regulatory requirement that the convening authority be familiar with the record of trial before acting on it.

■ 13. He is legally required, however, to consider "[t]he recommendation of the staff judge advocate or legal officer under RCM 1106...." RCM 1107(b)(3)(i). That recommendation, in turn, is legally required to contain information as to "[t]he findings and sentence adjudged by the court-martial." RCM 1106(d)(3)(A). Thus, under present statutory and regulatory practice, a convening authority might, but is not legally required to, have personal knowledge of the

findings as reflected in the record of trial; but a convening authority *is required* to have knowledge of those findings as they are reported to him in the recommendation of the SJA which is in front of him when he takes his action.[5]

■ The logical conclusion, then, is apparent: As between the findings that are reflected as adjudged in the record of trial and the findings purportedly reflected in the recommendation of the SJA as being adjudged, the more compelling evidence of those that implicitly were approved by the convening authority in his action are those of which he must be made aware as a matter of law—those in the recommendation.[6]

This result is fully consistent with our disposition in *Depew.* There, the SJA's recommendation had reported a conviction for *using* cocaine, which had not been found, instead of *distributing* cocaine, which had been found. Concededly, we focused in our order on the erroneous purported approval of the *use* conviction and the resultant nullity of the subsequent Court of Military Review's purported affirmance of *that* finding. However, if we had viewed these actions as merely extraneous and had viewed the convening authority's action as implicit approval of the

---

5. The dissenting opinion points out that a convening authority sometimes personally signs the referral of charges to trial, rather than having someone else sign on his behalf, and that Article 60(a), UCMJ, 10 USC § 860(a) (1983), and RCM 1101(a), Manual for Courts–Martial, United States, 1984, require that trial counsel notify the convening authority of the results of trial immediately after it is over. We cannot agree with the implicit claim of logic, however, that either or both of these events is persuasive evidence that the convening authority is correctly informed of the adjudged findings in the face of an SJA recommendation that patently is incorrect on that point.

The first of these—referral—assuredly occurred months before the convening authority takes his post-trial action and reflects the charges that were referred to trial and not those that were adjudged. In this context, it is not reasonable to believe that—with all of the important business to which such a commander must attend—he will recall the nature of the charges he sent to trial months earlier in this particular case, instead of relying on the findings that the SJA reports to him in his post-trial recommendation.

As to the second event—the report of the trial counsel immediately after conclusion of the court-martial—this response is equally applicable: That report is weeks and most often months prior to the convening authority's taking his action, and it is not reasonable to believe that such a report will be recalled and will be relied upon by the convening authority, instead of the SJA's recommendation that is on his desk literally as he takes his action.

6. As mentioned, RCM 1107(b)(3)(A)(ii) *requires* that the convening authority "consider ... [t]he recommendation of the staff judge advocate," and RCM 1107(b)(3)(B)(i) provides that the convening authority *"may* consider ... [t]he record of trial." (Emphasis added.) The convening authority here did state in his action that "the record of trial ... [was] considered." In light of the *specificity* of the legal requirement that the findings be reported in the SJA's recommendation, in relation to the comparatively general notation that "the record of trial" was considered as optionally permitted, we will not speculate whether the latter included recognition that the findings adjudged differed from those reported in the recommendation.

*distribution* conviction that had been adjudged but had been omitted from the recommendation, we simply would have ordered remedial steps to delete any reference to the use conviction and substitute the distribution conviction; in all other respects we would have affirmed the decision below.

14. Instead, however, we set aside that decision and returned the record for a new SJA recommendation and convening authority action, to be followed by new appellate proceedings under Articles 66 and 67. The necessary inference from this disposition is that we concluded there, as we now affirmatively do here, that, unless the convening authority's action expressly focuses on particular findings and in the absence of any more compelling evidence to the contrary, he implicitly approves the findings as they are reported to him in the recommendation of the SJA.

In this case, as indicated earlier, the recommendation erroneously omitted to mention the findings of guilty of Additional Charges I and II and their specifications, and there is no evidence at all that the convening authority did not rely upon this recommendation; indeed, even SPCM Order No. 6–92, which published this action on May 15, 1992, reflected the same erroneous omission. In this light, the convening authority cannot be deemed to have approved the omitted findings when taking his action.

### C

15. As noted earlier, 5 days after SPCM Order No. 6–92 was published, a "corrected copy" of that order was promulgated which purported to correct an "administrative error" in the original order by including the two earlier-omitted findings. The notation in the corrected copy that "[t]he convening authority's action was not affected" might seem to imply that, all along, the convening authority had intended to approve those findings but that the initial SPCM Order No. 6–92 simply inadvertently omitted them.

As the foregoing discussion indicates, however, that is not our view of the convening authority's action. Thus, instead of merely correcting an "administrative error" in the first promulgating order, the "corrected copy" of SPCM Order No. 6–92 actually reflected an action different from that which originally had been taken by the convening authority. Thus, the question is posed whether the convening authority had the power to change his original action once that action had been published on May 15.

As this Court discussed in a different context in *United States v. Boudreaux*, 35 MJ 291 (CMA 1992), *cert. denied*, — U.S. —, 113 S.Ct. 1365, 122 L.Ed.2d 743 (1993), a criminal case in the court-martial system moves along "a time-line" or through "a 'tunnel of power'" where, depending upon the locus of the case, a particular authority has power over the substance of the case. *See* 35 MJ at 293; and at 296 (Sullivan, C.J., concurring in the result). Thus, except for interlocutory maneuvers, for example, which may push the case ahead or pull it back, a court-martial case follows an orderly procession during which, at any given time, it rests within the power of a single authority.

16. At first glance it might seem that the terminal point of the convening authority's power over a case rigidly is keyed to his action. For instance, RCM 1107(f)(2) states in part: "The convening authority may recall and modify any action taken by that convening authority at any time before it has been published or before the accused has been officially notified." Also, in *United States v. Montesinos*, 28 MJ 38, 42 (CMA 1989), a majority of this Court concluded regarding RCM 1107(f)(2):

> The plain meaning of this language is that, in a case subject to review under Article 66 of the Code, 10 USC § 866, the convening authority loses jurisdiction of the case once he has published his action or has officially notified the accused thereof; and from that point on, jurisdiction is in the Court of Military Review. The only further contact that the convening authority has with the case occurs in the event of a remand or if he is empowered to suspend or remit the sentence pursuant to RCM 1108(b).

While accurate for the most part, neither our view in *Montesinos* regarding the thrust of RCM 1107(f)(2) nor the rule itself especially focuses on a circumstance like arose here. For instance, the Court in *Montesinos* specifically faced the question of the scope of the convening authority's power over a case that already and ineluctably had completed its usual journey through his station on the "time-line" or in the "tunnel of power" and had been remanded to him by the Court of Military Review for a particular purpose. Essentially, we were concerned there with whether the convening authority had all of the same power over the case under such a remand that he had when the case first had passed through his point in the process.

17. Our question here, however, is related but somewhat different. Cogently, it is: What is the "triggering mechanism" that moves the case from within the power of the convening authority to within the power of the Court of Military Review? *See United States v. Boudreaux, supra* at 294.

Where, for instance, the movement of the case from one point to the next requires an affirmative act by the accused, then that act itself, if timely taken, would seem to be the relevant event. *See, e.g.,* Art. 67; *United States v. Boudreaux, supra.* A court-martial conviction that results in a sentence which includes death, dismissal, a punitive discharge, or confinement for at least 1 year, however, requires no affirmative act by the accused to trigger appellate review by the Court of Military Review: It is automatic. Art. 66(b). Accordingly, something else— some event other than an affirmative act of an accused—triggers the movement of such a case from within the ambit of the convening authority's power to that of the Court of Military Review.

18. In the absence of any contrary statutory indication, the general guidance offered in RCM 1107(f)(2) might seem as logical an event as any—the publication or the notice to the accused of the convening authority's action. We believe, though, that there *is* contrary statutory indication of Congress' intent in this regard.

In 1983, Congress amended Article 61 of the Code to provide a mechanism by which an accused might affirmatively waive appellate review of a court-martial conviction that, otherwise, automatically would move at some point to the Court of Military Review. Specifically, except where the sentence includes death, Article 61(a) (1983) permits an accused to waive appellate review by "fil[ing] with the convening authority a statement expressly waiving the right of the accused to such review"; "signed by both the accused and by defense counsel"; and "filed within 10 days after the action [of the convening authority] under section 860(c) of this title (article 60(c)) is served on the accused or on defense counsel." This period for filing may be extended, again by the convening authority, by not more than 30 days upon good cause. Filing of such a waiver "bars review" by the Court of Military Review under Article 66 (*see* Art. 61(c) (1983)).

It is clear to us that this amendment of Article 61 (1983) reflects a congressional view that, until the waiver period has elapsed, the case has not moved to within the power of the Court of Military Review. A notice of waiver is filed "with the convening authority," not the Court of Military Review; indeed, other language in the same article specifically provides for "withdrawal of an appeal" from the Court of Military Review, as distinguished from waiving such an appeal in the first place. Extension of the period within which to file such a waiver, again, is within the exclusive statutory power of the convening authority.

19. In our opinion, this statute envisions a scheme in which a case does not move on the "time-line" or within the "tunnel of power" from the convening authority to the Court of Military Review until after the statutory time has elapsed within which an accused may affirmatively act to stop the case from moving. Until then, the train stands at the convening authority's station—stoked and ready to move at the scheduled time 10 days after the convening authority's action has been served on the accused or defense counsel—stoppable only by an affirmative act

by the accused before the scheduled departure to flip the switch from "on" to "off."

■ As long as the case remains within the power of the convening authority, he may correct any *administrative* error in the promulgating order or take any *ministerial* action that is appropriate. Once he has taken his action, however, and once that action has been served on the accused or on defense counsel, a convening authority cannot so arbitrarily change his earlier action in some *substantive* way in order to correct a mistake.[7] The convening authority's action is a substantive exercise of power over the results of a court-martial; after all, it is preceded by a process that seeks to ensure that it is an informed and considered decision (*e.g.*, service of SJA's recommendation on the defense with opportunity to respond before the action is taken—Art. 60(b)(1) (1986)), and notice of it to the accused sounds the whistle that signals that the case soon will depart, bound for the Court of Military Review. It would seem only fair—and, thus, legally necessary—that the same procedural steps that led to the initial action must be traced again if the convening authority intends to modify his original action that was taken while under some material misapprehension.

■ 20. In this case, those steps were not taken. Instead, out of the blue, the "corrected copy" of SPCM Order No. 6–92 appeared, which reflected a substantive change in the original action of the convening authority. Unilaterally taken, this change cannot be legally effective.

That being the case, then the Court of Military Review had no statutory jurisdiction to review the findings of Additional Charges I and II and their specifications; the convening authority was not aware of them when he took his action, so we cannot infer that he tacitly approved them for purposes of vesting power in the Court of Military Review to review them. Art. 66(c). He also did not take legally effective steps while he still had power over the case that would have changed his original action in response to his erroneous impression of the trial findings.

■ 21. We could, of course, set aside the original action and return the record for a new action, preceded by an SJA recommendation that would correctly inform the convening authority and followed by appellate review under Articles 66, 67, and potentially 67a, UCMJ, 10 USC § 867a. *See United States v. Depew, supra.* We are fully confident, however, that disapproval of the two problematic findings and affirmance otherwise of the findings and sentence affirmed by the Court of Military Review cannot in any way prejudice appellant and will adequately vindicate the interests of military society in these proceedings. Accordingly, in the interest of efficient administration of justice, we will follow this course.[8]

## IV

The decision of the United States Navy–Marine Corps Court of Military Review is reversed as to Additional Charges I and II and their specifications. The findings of guilty thereon are set aside, and those specifications are dismissed. In all other respects, the decision below is affirmed.

Chief Judge SULLIVAN and Judge COX concur.

---

7. Nothing in this opinion suggests that, after a convening authority's action has been published or served on the defense, a convening authority substantively may modify that action for any reason *other* than in response to an erroneous view of the status of the case at the time the action was taken. *See* RCM 1107(f)(2). By way of example, this opinion does not suggest in any way that a convening authority may modify an earlier action in response to misconduct of an accused that occurred subsequent to that action.

8. This case *never* should have reached the United States Court of Military Appeals. The error is obvious and needs correcting—not only for the

reasons that underpin the rationale of this case but also to ensure accurate records. In the future, appellate defense counsel should first seek remand of such a case for corrective action through a motion to the Court of Military Review for a new action based on an accurate record and a correct SJA recommendation. If the Court of Military Review denies that motion or if the convening authority does not take corrective action, *then* there is an issue for this Court to review. Otherwise, we are left with an incorrect record and a question whether an error caused any harm. *See* Art. 59(a), UCMJ, 10 USC § 859(a). That Hobson's choice is unacceptable.

GIERKE, Judge, joined by CRAWFORD, Judge, dissenting:

22. I believe that the majority elevates the staff judge advocate (SJA)'s post-trial recommendation into something that Congress did not intend. In the process, the majority turns Article 60(c)(3), Uniform Code of Military Justice, 10 USC § 860(c)(3) (1983), and RCM 1107(c), Manual for Courts-Martial, United States, 1984, on their heads.

The underlying concept embodied in Article 60(c)(3) (1983) and RCM 1107(c) is that a finding is approved unless expressly disapproved. The majority holds that, if findings are summarized at all, a finding is disapproved unless expressly mentioned by the SJA.

Before the 1983 revisions, Article 60 provided simply that "the record shall be forwarded to the convening authority, and action thereon may be taken by the person who convened the court, a commissioned officer commanding for the time being, a successor in command, or any officer exercising general court-martial jurisdiction." Article 64 provided, "Unless [the convening authority] indicates otherwise, approval of the sentence is approval of the findings and sentence." The implementing provisions of the Manual for Courts-Martial provided: "When any part of the sentence is to be approved, mention will be made in the action only of those findings or parts of findings which are to be disapproved.... Approval of the sentence, standing alone, constitutes approval of all findings of guilty." Para. 89c (3), Manual for Courts-Martial, United States, 1969 (Revised edition); para. 89c (3), Manual for Courts-Martial, United States, 1951.

23. In 1983, Article 60 was expanded. Article 60(a) now provides: "The findings and sentence of a court-martial shall be reported promptly to the convening authority after the announcement of the sentence." Article 60(c)(2) (1983) provides: "Action on the sentence of a court-martial shall be taken by the convening authority or by another person authorized to act under this section." Article 60(c)(3) (1983) provides: "Action on the findings of a court-martial by the convening authority or other person acting on the sentence is not required," but it provides further that such person may "dismiss any charge or specification by setting aside a finding of guilty thereto; or ... change a finding of guilty" to a conviction of a lesser-included offense.

The rules implementing Article 60 (1983) state that "[a]ction on the findings is not required," but the action on the sentence "shall be explicitly stated." RCM 1107(c) and (d)(1). In short, Article 60 (1983) and its implementing rules in the Manual for Courts-Martial retained the procedure by which findings were implicitly approved unless expressly disapproved.

24. Until this Court's cryptic decision in *United States v. Depew*, 35 MJ 235 (CMA 1992) (summary disposition), the absence of express approval of findings was not considered a jurisdictional impediment to action by a Court of Military Review. *See United States v. Jenkins*, 46 CMR 452 (ACMR 1972), *aff'd on other grounds*, 22 USCMA 311, 46 CMR 311 (1973). To the extent that *Depew* elevates an SJA's mistake into an impediment to the Court of Military Review's jurisdiction, *Depew* should be overruled.

The 1983 amendment of Article 60 was intended to remove the SJA's post-trial recommendation from the appellate process. *See* H. R. Rep. No. 549, 98th Cong., 1st Sess. 14 (1983), *reprinted in* 1983 U.S.Code Cong. & Admin News 2177, 2180. The majority opinion reinserts it, contrary to the intent of Congress. *See United States v. Beaudin*, 35 MJ 385, 389 (CMA 1992) (Gierke, J., concurring in part and in the result).

The underlying premise of the majority opinion is that the convening authority knows only what is in the SJA's post-trial recommendation. That premise is factually flawed in this case. Here, the convening authority had several sources of knowledge about appellant's court-martial. Article 60(a) (1983) and RCM 1101(a) require that the trial counsel notify the convening authority of the findings and sentence immediately after the trial. RCM 1107(b)(3)(A)(i) expressly requires the convening authority to consider the result of trial before taking action. There has been no suggestion that Article 60(a), RCM

1101(a), and RCM 1107(b)(3)(A)(i) were not followed here. Furthermore, the convening authority in this case personally signed the referral of the charges instead of having the referral signed by someone else at his direction. Finally, there was a pretrial agreement in this case which obligated appellant to plead guilty to the offenses omitted from the SJA's recommendation. I am not prepared to assume that the convening authority was ignorant of the terms of the agreement.

25. The majority acknowledges the convening authority's repeated and personal involvement in this case but adheres to the fiction that he knew only what the SJA told him in the post-trial recommendation. The majority summarily dismisses the facts that the convening authority personally signed the referral order, negotiated a pretrial agreement, and received the required report of the result of the court-martial by surmising that "[t]he first of these—referral—assuredly occurred months before the convening authority takes his post-trial action." Likewise, the majority dismisses trial counsel's report immediately after the court-martial because they surmise that "[t]hat report is weeks and most often months prior to the convening authority's taking his action." 40 MJ at 342 n. 5. This is more legal fiction, belied by fact. The convening authority referred these charges on March 4, 1992, accepted the offer to plead guilty on April 10, and received the trial counsel's report on April 15. He took his action on May 15. Barely a month passed between the referral and the trial, and exactly a month passed between the trial and his action. Furthermore, the caption on the special court-martial order reflects that it was only the sixth order published in calendar year 1992—not exactly indicative of a court-martial mill. Under the facts of this case, I cannot accept the majority's fiction of the ignorant convening authority.

26. The characterization of the corrected court-martial order as a withdrawal and republication of the convening authority's action is still more fiction. 40 MJ at 343. The order was authenticated by Lieutenant Commander (LCDR) Geiser, the SJA whose defective post-trial recommendation precipitated this case. What happened in this case is abundantly clear: LCDR Geiser, the author of both the post-trial recommendation and the court-martial promulgating order, discovered his omission and corrected it. It is uncontroverted that the wording of the original convening authority's action remained unchanged.

27. There are two persons in this case who know what the convening authority intended: the convening authority himself and his staff judge advocate, LCDR Geiser. By correcting the promulgating order, LCDR Geiser documented what the convening authority intended. There is no evidence to the contrary.

This case illustrates the wisdom of the waiver rule in RCM 1106(f)(6). The adjudged sentence was less than the pretrial agreement allowed. It would have been disadvantageous to appellant for his defense counsel to point out that appellant was convicted of more offenses than those indicated by the SJA's recommendation. If the convening authority did not grant clemency on the basis of the charges reflected in the post-trial recommendation, he certainly would not have granted clemency based on additional misconduct not reflected in the post-trial recommendation. Thus, even conceding that the SJA erred, there is no possibility of prejudice in this case.

I would affirm the decision of the United States Navy–Marine Corps Court of Military Review.