UNITED STATES, Appellee,

v.

**Ronald A. MARK, Boatswain's Mate Seaman, U.S. Navy, Appellant.**

No. 96–0746.
Crim.App. No. 94–1657.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 8, 1997.

Decided Sept. 12, 1997.

Crawford, J., filed dissenting opinion.

For Appellant: *Lieutenant E. Rubiella,* JAGC, USNR (argued); *Commander Mary T. Hall,* JAGC, USN.

For Appellee: *Lieutenant R.J.E. Verby,* JAGC, USNR (argued); *Colonel Charles Wm. Dorman,* USMC, and *Commander D.H. Myers,* JAGC, USN (on brief); *Lieutenant Andrew J. Waghorn,* JAGC, USNR.

*Opinion of the Court*

SULLIVAN, Judge:

On January 6, 1994, appellant was tried by a special court-martial composed of a military judge sitting alone at the Naval Legal Service Office, Norfolk, Virginia. Pursuant to his pleas, he was found guilty of assaulting a petty officer in the execution of his office,[1] in violation of Article 91, Uniform Code of Military Justice, 10 USC § 891. Appellant was sentenced to a bad-conduct discharge, confinement for 150 days, forfeiture of $400.00 pay per month for 3 months, and reduction to pay grade E–1. The convening authority approved the adjudged sentence on June 24, 1994. On February 16, 1996, in an unpublished decision, the Court of Criminal Appeals affirmed the findings and sentence.

On September 12, 1996, this Court granted review of the following issue:

WHETHER THE NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS ERRED IN PRESUMING THAT A STAFF JUDGE ADVOCATE'S RECOMMENDATION, MISSING FROM THE RECORD, HAD BEEN PREPARED SIMPLY BECAUSE THE CONVENING AUTHORITY WROTE IN HIS

---

1. Counsel for both sides have erroneously stated the findings. Final Brief at 1 and Answer to Final Brief at 1. The Assignment of Errors and the Reply contain the same errors. The Government's motion in this Court to correct its error was granted.

ACTION THAT THE RECORD HAD BEEN REVIEWED PURSUANT TO ARTICLE 60.

We hold that no presumption of regularity is applicable in this case because absence of the staff judge advocate (SJA)'s recommendation and related papers renders the record and allied papers substantially incomplete. *See generally United States v. Bono*, 26 MJ 240, 243 n. 3 (CMA 1988); *see also United States v. Eichenlaub*, 11 MJ 239 (CMA 1981). We set aside the decision of the court below and remand this case for compliance with RCM 1103(b)(3)(G) and 1105–1107, Manual for Courts–Martial, United States, 1984. *See United States v. Stanford*, 37 MJ 388, 391 (CMA 1993).

The original record of appellant's trial was forwarded to the then-Court of Military Review[2] for review under Article 66(b), UCMJ, 10 USC § 866(b). It did not contain the original SJA's recommendation, proof of service of the recommendation on either appellant or his trial defense counsel, or the trial defense counsel's response to the recommendation. The appellate court below issued an order to the Government on November 30, 1995, to "produce the Staff Judge Advocate's Recommendation, proof of service of the recommendation and trial defense counsel's response." The Government was "unable to retrieve these documents" and conceded that "the post-trial documents" were "irretrievably lost."

The court below concluded that an SJA's recommendation had been prepared and was properly considered by the convening authority. That court reasoned:

[T]he convening authority stated in his 24 June 1994 action that "[t]he record of trial has been reviewed pursuant to Article

60(d) of the UCMJ...." Article 60(d), Uniform Code of Military Justice, 10 USC § 860(d), specifies that a convening authority "shall obtain and consider the written recommendation of his staff judge advocate...." Thus, in the absence of any proof to the contrary, we conclude that a staff judge advocate recommendation was prepared in this case and that it was properly considered by the convening authority.

Further, the court below stated that they would "not seriously entertain" this assignment of error without an affirmative declaration from appellant "that neither he nor his trial defense counsel received a copy of the recommendation." Unpub. op. at 2.

— — —

■ Our starting point in resolving the granted issue is the majority opinion of the military appellate court below. It recognized that no SJA's recommendation or proof of service of the same on defense counsel was attached to the record as required by RCM 1103(b)(3)(G). It also recognized that no response of any type by defense counsel to the SJA's recommendation was attached to the record as required by RCM 1103(b)(3)(H). Nevertheless, in the absence of evidence to the contrary, it presumed that the convening authority had these materials before him when he acted in this case and affirmed the findings of guilty and the sentence. We reject the lower appellate court's application of a presumption of regularity in this case. *See generally Johnson v. United States*, 225 U.S. 405, 411, 32 S.Ct. 748, 750, 56 L.Ed. 1142 (1912).

Article 60(d), UCMJ, 10 USC § 860(d)(1983)[3] requires that the convening

---

2. See 41 MJ 213, 229 n.* (1994).

3. This provision states:

(d) Before acting under this section on any general court-martial case or any special court-martial case that includes a bad-conduct discharge, the convening authority or other person taking action under this section shall obtain and consider the written recommendation of his staff judge advocate or legal officer. The convening authority or other person taking action under this section shall refer the record

of trial to his staff judge advocate or legal officer, and the staff judge advocate or legal officer shall use such record in the preparation of his recommendation. The recommendation of the staff judge advocate or legal officer shall include such matters as the President may prescribe by regulation and shall be served on the accused, who may submit any matter in response under subsection (b). Failure to object in the response to the recommendation or to any matter attached to the recommendation waives the right to object thereto.

authority obtain and consider the recommendation of the SJA before taking action on a case. *See also* RCM 1107(b)(3)(A)(ii) ("[C]onvening authority shall consider .... [t]he recommendation of the staff judge advocate...."). This recommendation is legally required to contain certain information. RCM 1106(d)(3). Article 60(d) further requires that the SJA's recommendation be served on the accused, who may respond to the recommendation. RCM 1106(f). Finally, the President has prescribed that the recommendation and proof of service of the recommendation on the defense counsel "shall be attached to the record." RCM 1103(b)(3)(G) and (c)(1).

The importance of the SJA's recommendation with respect to a convening authority's action is long established. *See, e.g., United States v. Leal,* 44 MJ 235 (1996); *United States v. Norment,* 34 MJ 224 (CMA 1992); *United States v. Narine,* 14 MJ 55 (CMA 1982); *United States v. Goode,* 1 MJ 3 (CMA 1975). Although its scope has been narrowed, the significance of the SJA's recommendation and its contents has actually increased. This has occurred because the convening authority no longer is required to personally review the record of trial before taking action. *See United States v. Diaz,* 40 MJ 335, 340 (CMA 1994)(explaining 1983 amendments to the Code related to the convening authority's post-trial responsibilities). Finally, we have held that service of the SJA's recommendation on the accused's defense counsel is a critical part of the accused's post-trial representation. *See United States v. Moseley,* 35 MJ 481, 484–85 (CMA 1992)(holding that failure to serve SJA's recommendation on defense counsel is tantamount to absence of counsel at that important stage of judicial process).

Despite our demonstrated concern with this process, the Court of Criminal Appeals affirmed appellant's case without there being an SJA's recommendation and attendant papers before them. Relying *sub silentio* on a presumption of regularity, that court inferred from the convening authority's action in this case that the post-trial recommendation, absent in the record, actually existed. The post-trial action in pertinent part states:

*The record of trial has been reviewed pursuant to Article 60(d) of the UCMJ, and is forwarded to the Navy–Marine Corps Appellate Review Activity (Code 40.2), Office of the Judge Advocate General, Washington Navy Yard, Washington, D.C. 20374–2002 for review under Article 66, UCMJ.*

(Emphasis added.)

The court below further inferred from this statement that the SJA's recommendation was submitted to the convening authority before he acted in this case; that it was served on defense counsel as required by law before the convening authority acted in this case; and that any response by defense counsel was submitted to the convening authority before he acted in this case. We cannot join this parade of presumptions.

The presumption of regularity entertained in military law is derived from the one in civilian law which attaches to routine administrative acts performed by officials of the Government. *See generally United States v. Masusock,* 1 USCMA 32, 35, 1 CMR 32, 35 (1951). This well-recognized presumption's application is not unlimited, but instead has been delineated as follows:

§ 2534. **Regularity: (1) Performance of official duty and regularity of proceedings.** The general experience that a rule of official duty or a requirement of legal conditions is fulfilled by those upon whom it is incumbent has given rise occasionally to *a presumption of due performance of official duty.* This presumption is more often mentioned than enforced; and its scope as a real presumption is indefinite and hardly capable of reduction to rules.

*It may be said that most of the instances of its application are found attended by several conditions;* first, that the matter is more or less in the past and incapable of easily procured evidence; second, that it involves a mere formality or detail of required procedure in the routine of a litigation or of a public officer's action; third, that it involves to some extent the security of apparently vested rights so that the

presumption will serve to prevent an unwholesome uncertainty; and, finally, that the circumstances of the particular case add some element of probability.

*See generally* 9 Wigmore, *Evidence* at 625 (Chadbourn rev.1981)(some emphasis added).

Applying the above in appellant's court-martial case, we note that an SJA's recommendation is easily proven because it must be reduced to writing and attached to the record of trial. *See* RCM 1103(b)(3)(G). Moreover, our decisions have made clear that the post-trial review process is anything but routine or one involving the mere formality of a required procedure. *See United States v. Jones,* 36 MJ 438, 439 (1993); *United States v. Bono,* 26 MJ 240, 243 n. 3 (1988). Finally, the additional omission of the usual defense response or declination to respond diminishes the probability that such a recommendation was given in this case. *See* RCM 1103(b)(3)(H). In these circumstances, no presumption or implication of regularity is warranted.

■ In the alternative, the Government argues that appellant must show prejudice or harm resulting from failure to attach the SJA's recommendation to the record. *See generally* Art. 59(a), UCMJ, 10 USC § 859(a). It notes that appellant was represented by counsel during the time of the post-trial process and that our decision in *United States v. Hickok,* 45 MJ 142 (1996), requires a demonstration of prejudice in these circumstances before a remand for a new recommendation and action will be ordered. We also note that our decision in *United States v. Murray,* 25 MJ 445, 449 (1988), employed a harmless-error analysis with respect to omission of an SJA's *pretrial* advice. We reject these arguments.

*United States v. Hickok, supra,* and its progeny addressed failure to serve defense counsel with the SJA's recommendation prior to action by the convening authority. In those cases, the unserved recommendation was before the reviewing court and it could be examined for prejudice to the accused. Here, not only is there no proof of service on defense counsel but we have no idea as to

what comments, information, and advice were provided to the convening authority. *See United States v. McCullah,* 11 MJ 234, 237 (CMA 1981)("without knowing the details of the evidence which has been omitted from the record of trial, an appellate court usually is unable to determine that the omission was not prejudicial to an appellant"). The decision of this Court in *Hickok* does not preclude a remand in this case.

Admittedly, we have held that omission of required advice by an SJA does not always require a remand. *United States v. Murray, supra,* established a harmless-error rule for assessing prejudice resulting from omission of an SJA's pretrial advice. However, we did so because the record of trial provided an ample basis to determine whether the charges were serious enough and properly supported to warrant referral to a court-martial. The permissible extra-record basis for a post-trial recommendation and the unrestricted nature of a convening authority's clemency power discourage application of such a rule to an SJA's post-trial recommendation. *See generally United States v. Diaz, supra.*

In sum, an SJA's post-trial recommendation is still an important part of military due process. *See United States v. Diaz, supra.* It is not only a critical factor in the convening authority's post-trial sentence action but also it is the focal point for the servicemember's efforts to secure clemency. *See United States v. Jones* and *United States v. Bono,* both *supra; Goode, supra* at 5–6. The failure to perform such a review or its omission from the record and allied papers without any indication of its content renders the proceedings substantially incomplete. *See also United States v. Eichenlaub, supra* (military judge's rationale on sentence adjudged and recommended suspension are not insubstantial matters). Accordingly, remand for an SJA's recommendation, service on defense counsel, and a new convening authority's action is required in this case. *See United States v. Stanford, supra.*

The decision of the United States Navy–Marine Corps Court of Criminal Appeals and the action of the convening authority are set

aside. The record of trial is returned to the Judge Advocate General of the Navy for remand to a convening authority for a new recommendation and action. Thereafter, Articles 66 and 67, UCMJ, 10 USC §§ 866 and 867 (1994), respectively, will apply.

Chief Judge COX and Judges GIERKE and EFFRON concur.

CRAWFORD, Judge (dissenting):

Article 59(a), Uniform Code of Military Justice, 10 USC § 859(a), has no exceptions from application of its harmless-error standard. Thus, that standard should be applied in this case. If this case is returned to a convening authority, what are his or her options? Restore the rank? Set aside the forfeitures? The real issue is the discharge. I would suggest that, in the present downsizing climate, appellant's discharge would not be suspended or set aside because any convening authority would prefer to have a vacancy rather than this appellant in the unit.

Appellant was convicted of a vicious assault on a petty officer in the execution of his office. After refusing to obey an order and having a verbal confrontation with the victim, appellant left the area but returned nearly an hour later. When the victim had his back turned while seated, appellant hit him in the head with a pipe causing a gash in the forehead and the need for emergency treatment. The victim's headaches continued for approximately 2 weeks. Additionally, although the pretrial agreement included pleading guilty to disobedience of an order, eventually, because of inability by the judge to find a provident plea, the agreement was amended and a finding of not guilty was entered as to that specification.

In addition to the aggravated assault upon a petty officer in the execution of his office, appellant had been given punishment under Article 15, UCMJ, 10 USC § 815, on May 5, 1993, for dereliction of duty, and an Article 15 on July 19, 1991, for 3 specifications of disrespect and assault. Appellant was lucky that this case did not go to a general court-martial. As I indicated, the discharge would not be suspended by any convening authority, let alone set aside, so I see no need to require what undoubtedly would be a fruitless exercise.