**UNITED STATES, Appellee,**

v.

**Michael S. McKINLEY, Airman,
U.S. Air Force, Appellant.**

No. 96–1234.
Crim.App. No. S29103.

U.S. Court of Appeals for
the Armed Forces.

Argued March 3, 1998.

Decided Aug. 24, 1998.

For Appellant: *Captain Tishlyn Taylor* (argued); *Lieutenant Colonel Kim L. Sheffield* (on brief); *Colonel Douglas H. Kohrt* and *Captain Michael L. McIntyre.*

For Appellee: *Captain Martin J. Hindel* (argued); *Colonel Theodore J. Fink, Lieutenant Colonel Michael J. Breslin,* and *Major LeEllen Coacher* (on brief); *Colonel Brenda J. Hollis* and *Major Allen G. Erickson.*

*Opinion of the Court*

COX, Chief Judge:

We granted review of two issues regarding the possible need of a new convening authority action (RCM 1107, Manual for Courts–Martial, United States (1995 ed.)). 46 MJ 415 (1997). In the first issue, appellant complains that the staff judge advocate (SJA)'s post-trial recommendation (RCM 1106) was deficient in failing to address the issue of "racially-based selective prosecution," which appellant asserts was raised in the post-trial clemency matters submitted by the defense (RCM 1105). In the second issue, he contends that "the SJA did not advise the convening authority in his recommendation of the matters required under RCM 1106(d)." Finding no error to the substantial prejudice of appellant, we now affirm. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a).

Appellant was convicted, in accordance with his pleas, of a single specification of using crystal methamphetamine on divers occasions, in violation of Article 112a, UCMJ, 10 USC § 912a. A military judge sitting alone as a special court-martial sentenced him to a bad-conduct discharge, confinement for 3 months, and reduction to E–1. Consistent with a pretrial agreement, the convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for 2 months, and reduction to E–1. The Court of Criminal Appeals affirmed in an unpublished opinion.

 Concerning the first issue, as indicated, appellant pleaded guilty pursuant to a pretrial agreement. He made no motions pertaining to selective prosecution, introduced no such evidence, nor otherwise raised any such issue at any time prior to adjournment of the court-martial.

Post-trial, he submitted a lengthy clemency statement to the convening authority, wherein he apologized for his misconduct, described his military and life circumstances, and pleaded for a chance to rehabilitate himself. In one section of the statement, he complained about the disparate punishment he received compared with that of a co-actor, Airman Basic (AB) L, asserting at one point that he was

> *maligned by AB [L], a white female.* And when the truth came out, rather than holding her accountable for her deliberate abuse of the criminal process, *the government turned a blind eye to her crimes and turned on me, a black male.* This may not be the case, but I cannot view this in any other light.

(Emphasis added.)

Trial defense counsel, in her submission to the convening authority, also argued for sentence reduction for appellant, reiterating the sentence disparity contention involving appellant and AB L. Counsel also asserted that an Airman First Class (A1C) D had made false statements in connection with the investigation of appellant and AB L, but that A1C D had not been punished. In her submissions to the convening authority, defense counsel made no reference to racial distinctions.

Under the Rules for Courts–Martial, the SJA "is not required to examine the record for legal errors" in the first instance. RCM 1106(d)(4). However, the rules go on to provide that,

> when the recommendation is prepared by a staff judge advocate, the staff judge advocate *shall state whether, in the staff judge advocate's opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105* or when otherwise deemed appropriate by the staff judge advocate. *The response may consist of a statement of agreement or disagreement with the matter raised by the accused.* An analysis or rationale for the staff judge advocate's statement, if any, concerning legal errors is not required.

(Emphasis added.)

In other words, had the SJA perceived that appellant was raising a selective prosecution issue, appellant's contention, as now articulated before this Court, would have been fully satisfied by a response to the effect of: "The accused has asserted an issue of selective prosecution. I disagree that the accused was selectively prosecuted or that corrective action is required."

Apparently, however, the SJA did not perceive that what was being asserted was a selective prosecution claim—and quite reasonably in the context. The SJA did, however, respond to what he perceived to be a sentencing disparity assertion. Thus he noted, in an addendum to his recommendation, that the distinction in treatment between appellant and A1C D was based on the fact that A1C D had not used drugs, but had merely lied to protect her friends.

Regarding AB L, the SJA explained, *inter alia*, that

> the information available at the time [of the investigation] indicated AB [L] was less culpable and that her testimony would be needed to remove Amn McKinley, an alleged distributor, from the Air Force. Second, Amn McKinley's record justified

taking more serious action. Amn McKinley had two prior Article 15s and two prior LOR/UIFs. These actions apparently had no effect in altering Amn McKinley's conduct. Even though preliminary investigation indicated Amn McKinley was a drug dealer, this was not proven at trial. Later investigation indicates Amn McKinley was *not* a drug dealer.

(Emphasis in original.)

The SJA also acknowledged that

AB [L] was not court-martialed because the government did not learn the full extent of her drug use until after she had the protection of testimonial immunity. In other words, all things being equal, AB [L] would have been court-martialed; Amn McKinley would not have received an Article 15.

A charge of selective prosecution in the federal courts arises implicitly under the Due Process Clause of the Fifth Amendment. And although the Executive exercises broad discretion in deciding whether or not to prosecute, the decision is subject to review under the equal protection component of the Due Process Clause. *United States v. Armstrong,* 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). However, as two leading commentators note:

Whether raised in federal court or state court, the claim is not likely to succeed; courts "have found only a handful of equal protection violations" arising out of the charging decisions of prosecutors. This is because claimants bear a "heavy burden" to overcome the presumption of legal regularity in enforcement of the penal law by proving the three essential elements of a discriminatory prosecution claim: (1) that other violators similarly situated are generally not prosecuted; (2) that the selection of the claimant was "intentional or purposeful"; and (3) that the selection was pursuant to an "arbitrary classification."

\* \* \*

The defendant's more immediate hurdle, however, is to make a sufficient showing to require that an evidentiary hearing be held.

2 W. LaFave and J. Israel, Criminal Procedure § 13.4 at 186–88 (1984)(footnotes omitted).

Under the circumstances here, we hold that appellant's references in his RCM 1105 and 1106 submissions to sentencing disparity cannot reasonably be read to raise the legal issue of selective prosecution in a manner that would require the SJA to respond under RCM 1106(d)(4).

The second granted issue, at least as framed by appellant, asserts as fact that the SJA failed to advise the convening authority of certain required matters. On closer examination, it appears appellant makes no such assertion. Instead, the essence of the claim is that several documents referenced as attachments to the SJA's recommendation do not appear in the allied papers together with the recommendation. Thus appellant asserts that "we can only speculate about whether they were provided to the convening authority." Appellant goes on to misassert that "[t]here is no evidence the convening authority was advised as required by R.C.M. 1106." Final Brief at 6.

The documents in issue are the "AF Form 1359" and the "Personal Data Sheet," both of which were listed on the recommendation as "Attachments." The fact that both documents were identified on the SJA recommendation constitutes at least some evidence that they were attached to the recommendation when it was presented to the addressee, the convening authority.

■ The Court of Criminal Appeals informs us that the first document is a form styled, "Report of Result of Trial." Unpub. op. at 2. The Rules require that the convening authority be informed as to "[t]he findings and sentence adjudged by the court-martial." RCM 1106(d)(3)(A). There is no requirement that any particular form be used. The convening authority was unquestionably informed of the results of trial in three separate locations: the SJA's recommendation, the clemency petitions submitted by the defense, and the addendum to the recommendation. There is no suggestion

that this information was incorrect in any respect. With respect to the results of trial, appellant's contention is without merit.

■ The Court of Criminal Appeals also informs us that the second document listed on the recommendation is the same document that appears in the record of trial as Prosecution Exhibit 2, bearing the same name, "Personal Data Sheet." Unpub. op. at 2. This document includes such basic data as an accused's name, term of service, prior disciplinary actions, and awards and decorations. This information also was required to be communicated to the convening authority. RCM 1106(d)(3)(C). The fact that the document can be located in the record of trial does not, of course, establish that it accompanied the SJA's recommendation. For that conclusion, we are left with the inference, if any, to be drawn from the fact of the listing of the document as an attachment to the recommendation.

The Court of Criminal Appeals was convinced that it was "dealing with strictly an administrative failure to attach the documents to the record of trial and that the appropriate documents and required information were supplied to the convening authority." Unpub. op. at 2. We treat the lower court's conclusion as a finding of fact, which we will not disturb unless it is unsupported by the record or is clearly erroneous. *United States v. Lincoln*, 42 MJ 315, 320 (1995). Given that the Personal Data Sheet was listed as an attachment, and given the presumption of government regularity in the handling of documents, we are satisfied on this record that there was indeed evidence that the convening authority was duly informed and that the Court of Criminal Appeals was not clearly erroneous. *Cf. United States v. Mark*, 47 MJ 99, 101–02 (1997), quoting 9 Wigmore, *Evidence* § 2534 at 625 (Chadbourn rev.1981).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Judges SULLIVAN, CRAWFORD, and GIERKE concur.

EFFRON, Judge (concurring in part and in the result):

I agree with the majority's resolution of Issue I, but disagree with their analysis of Issue II. Citing *United States v. Mark*, 47 MJ 99, 101–02 (1997), the majority relies on "the presumption of government regularity in the handling of documents," 48 MJ at 283, to approve the speculation of the Air Force Court of Criminal Appeals that the contested documents actually were supplied to the convening authority. The majority fails to address the competing viewpoint expressed by another panel of the court below, which found error in the absence from the record of similar documents. *See United States v. Walsh*, No. S29196 (Aug. 29, 1996). Given the low threshold for error in the post-trial review process, *see, e.g., United States v. Demerse*, 37 MJ 488, 492 (CMA 1993), I disagree with the majority's application of a presumption of regularity in this context, and I see no particular reason why we should countenance disparate reliance on the presumption of regularity in similar cases by the Court of Criminal Appeals.

Although I would not apply the presumption of regularity in this case, I would affirm the findings and sentence on the basis of harmless error. As the majority notes, 48 MJ at 282–83, the information that would have been presented to the convening authority in the Report of Result of Trial was contained in other documents provided to the convening authority, including the staff judge advocate's recommendation and addendum and the defense submissions. With respect to the information contained in appellant's Personal Data Sheet—which included reference to appellant's National Defense Service Medal and Air Force Training Ribbon—the defense apparently viewed these matters as so insignificant that defense counsel did not refer to them in his sentencing argument or post-trial submissions, and appellate defense counsel has made no mention of the nature of the items in the brief filed with this Court.

In view of the nature of appellant's awards, any omission from the materials submitted to the convening authority did not materially prejudice the substantial rights of appellant,

even under the low threshold for prejudice in the post-trial setting. *See, e.g., United* *States v. Hill*, 27 MJ 293, 296 (CMA 1988).