### UNITED STATES

v.

### Nick A. KLEIN, Airman Recruit (E–1), U.S. Navy.

### NMCM 200000894.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 30 Nov. 1999.

Decided 26 Sept. 2001.

CAPT Donald L. Nelson, JAGC, USNR, Appellate Defense Counsel.

LT C.J. Gramiccioni, JAGC, USNR, Appellate Government Counsel.

Before DORMAN, Senior Judge, VILLEMEZ, and OZMUN, Appellate Military Judges.

DORMAN, Senior Judge:

A special court-martial, consisting of a military judge, convicted the appellant, consistent with his pleas of five specifications of failing to go to his appointed place of duty and of wrongful use, on divers occasions, of methamphetamine, in violation of Articles 86 and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 912a. He was awarded a bad-conduct discharge, confinement for 50 days, and forfeitures of $633.00 pay per month for two months. The convening authority [CA] initially approved the sentence as adjudged but suspended confinement in excess of 28 days pursuant to the pretrial agreement.[1] The CA also suspended the bad-conduct discharge.[2] In a later action, the CA withdrew his earlier action and approved the sentence as adjudged, except he only approved confinement for 28 days. In this second action the CA did not suspend the bad-conduct discharge.

We have carefully reviewed the record of trial, the appellant's assignments of errors, and the Government's response. Following that review, we find merit in the appellant's second assignment of error. We conclude, however, that the findings and sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

On 30 November 1999, the appellate was convicted, pursuant to his pleas, and sen-

---

1. The period of suspension was for four months from the "date of trial" and, as noted in the CA's initial action, the suspended confinement was remitted before the action was taken. We caution counsel to avoid using the "date of trial" as the initiation date for a period of suspension, since a trial may take place on a number of dates. The better practice is to start the period of suspension on the date the sentence is adjudged or the date of the CA's action.

2. This period of suspension was for 12 months from the "date of trial."

tenced. His pleas were in accordance with his pretrial agreement. On 26 January 2000, trial defense counsel examined the record of trial. On 2 February 2000, the appellant submitted a request for clemency in which he requested that the bad-conduct discharge be suspended. On 9 February 2000, the military judge authenticated the record of trial. It was served upon the trial defense counsel on 14 February 2000. On 18 April 2000, the Staff Judge Advocate's Recommendation [SJAR] was completed and forwarded to the trial defense counsel. On 19 May 2000, the CA took his initial action in the appellant's case. The action reads in part:

> In the case of Airman Recruit Nick A. Klein, . . . , the sentence is approved and is executed, but the execution of that part of the sentence extending to confinement in excess of 28 days was suspended for a period of 4 months from the date of trial. . . . The part of the sentence extending to the bad conduct (sic) discharge will be suspended for a period of 12 months from the date of trial, at which time, unless the suspension is sooner vacated, it will be remitted without further action.

Convening Authority's Action of 19 May 2000. In his action, the CA also noted that he considered the SJAR that was "submitted to the accused's defense counsel on 1 May 2000" and the "request for clemency submitted by the defense counsel on 2 February 2000." *Id.* In the endorsement to the receipt of the SJAR, however, the trial defense counsel indicated that he had received the SJAR on 24 May 2000.

After the appellant's record was forwarded to and received by this court for review, the CA issued a new action on 12 July 2000. In this action he states that he "did not intend to suspend the bad-conduct (sic) discharge for a period of 12 months." Convening Authority's Action of 12 Jul 2000 at 1. The new action purports to withdraw the 19 May CA's Action, and substitute the new action in its place. The new action is essentially the same as the original action, except that it approved only 28 days of the adjudged confinement, and it does not suspend the bad-conduct discharge. *Id.* Subsequently, the CA submitted an affidavit to this court in

which he states that "[t]hrough administrative oversight, and contrary to my express intention, I signed Special Court–Martial Order 4–00 directing suspension of the bad-conduct (sic) discharge for a period of 12 months. At no time have I ever intended to suspend the adjudged bad-conduct (sic) discharge in the . . . case." Affidavit of CAPT D.K. Dupouy, U.S. Navy, of 10 Sep 01.

**Premature Action By The CA**

■ On appeal the appellant asserts that plain error occurred when the CA took action without considering a recommendation timely served upon the accused. We do not find plain error.

Although appellant styles his initial assignment of error as a premature action by the CA, the crux of the issue is:

> WHERE THE TRIAL DEFENSE COUNSEL DID NOT RECEIVE THE SJAR UNTIL FIVE DAYS AFTER THE CA TOOK HIS ACTION IN THIS CASE, DID THIS ERROR PREJUDICE THE SUBSTANTIAL RIGHTS OF THE APPELLANT?

A copy of the SJAR must be served on an accused's counsel for comment before it is submitted to the CA. RULE FOR COURTS-MARTIAL 1106(f)(1) and (f)(4), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.). The importance to an accused of this stage of the criminal proceedings has long been recognized in military case law. *United States v. Johnston,* 51 M.J. 227 (1999); *United States v. Hickok,* 45 M.J. 142 (1996); *United States v. Moseley,* 35 M.J. 481 (C.M.A.1992); *United States v. Palenius,* 2 M.J. 86 (C.M.A. 1977). The CA has "wide discretion" to act on the findings and sentence. *Moseley,* 35 M.J. at 484–85. Therefore, an accused's best opportunity for relief generally lies with the CA. *Johnston,* 51 M.J. at 229.

Previously, our superior court held that the failure to serve a copy of the SJAR on the defense counsel who represented the accused in the case was tantamount to depriving the accused of counsel at that important post-trial stage. *Moseley,* 35 M.J. at 484 (holding that the test for harmlessness would be limited to whether subsequently afforded counsel was able to make up for the earlier

deprivation). More recently, however, the court has held that, henceforth, where an appellant is represented by counsel who has the legal responsibility to protect the client's interests during that stage of the post-trial process, the appellant must show the Court of Criminal Appeals what would have been submitted had counsel been properly served with a copy of the SJAR or an addendum to the SJAR that contains new matter. *United States v. Howard*, 47 M.J. 104, 107 (1997); *United States v. Chatman*, 46 M.J. 321, 323 (1997). *See also United States v. Schrode*, 50 M.J. 459, 460 (1999)(finding that service of SJAR on defense counsel after CA's action did not prejudice accused); *United States v. Nelson*, 35 M.J. 716, 719 (N.M.C.M.R.1992)(holding that CA's action is not a nullity if taken before trial defense counsel received SJAR, unless the appellant is prejudiced). To carry his burden, the appellant has only to make "some colorable showing of possible prejudice." *United States v. Wheelus*, 49 M.J. 283, 289 (1998)(quoting *Chatman*, 46 M.J. at 324).

In this case, the appellant argues that he was denied the opportunity to submit corrections or rebuttal to anything in the SJAR believed to be erroneous, inadequate or misleading. Appellant's Brief of 30 Jul 2001 at 3–4. However, having had ample time to review the record and the SJAR, the appellant has not indicated what, if anything, he would have commented upon had he been given the chance.

The appellant has not made a colorable showing of possible prejudice in this case. He has not indicated what he would have commented upon, or identified any errors or inadequate and misleading information in the SJAR that he would have commented upon. Therefore, regarding the first issue, the appellant failed to meet his burden. *Wheelus*, 49 M.J. at 288.

In our review of the SJAR, we can find only one minor error. In Specification 4 of the Additional Charge, the SJAR lists the offense as a failure to go to the "1745 extra military instruction muster." Staff Judge Advocate's Recommendation of 18 Apr 2000 at 2. As alleged on the Charge Sheet, the specification states that the appellant failed to go to "extra military instruction." Charge Sheet. This error in the SJAR and Court–Martial Order is *de minimis*.

### The Corrected CA's Action

In his second assignment of error, the appellant alleges that the CA's 12 July 2000 Action was a nullity. The appellant's prayer of relief is that we set aside the bad-conduct discharge. While we agree that the CA's action of 12 July 2000 is a nullity, we need not set aside the bad-conduct discharge.

Because the CA attempted to withdraw and substitute his earlier action after our Court acquired jurisdiction over the case, the appellant is correct in arguing that the second action of the convening authority is a nullity. R.C.M. 1107(f)(2). The appellant, however, is incorrect in his belief that his bad-conduct discharge should be set aside.

R.C.M. 1107(f)(2) provides in pertinent part that:

> The convening authority may recall or modify any action taken by that convening authority at any time before it has been published or before the accused has been officially notified. The convening authority may also recall or modify any action at any time prior to forwarding the case for review, as long as the modification does not result in action less favorable to the accused than the earlier action.

Once the CA has forwarded the record for review by this Court, he may take a new action upon being directed to modify "any incomplete, ambiguous, void, or inaccurate action." *Id.* This provision of the Manual is reinforced by R.C.M. 1107(g), which provides that:

> When the action of the convening authority or of a higher authority is incomplete, ambiguous, or contains clerical error, the authority who took the incomplete, ambiguous, or erroneous action may be instructed by an authority acting under Article 64, 66, 67, or 69 to withdraw the original action and substitute a corrected action.

While the Government concedes that the July 12th action by the CA is a nullity, it argues that we should return the case to the CA and direct that he substitute a corrected

action. In making this argument the Government relies on *United States v. Smith*, 44 M.J. 788 (N.M.Ct.Crim.App.1996). We find *Smith* to be factually distinguishable.

In *Smith* we returned the record of trial to the convening authority and directed that the original action be withdrawn and a corrected action be prepared to replace it. In *Smith*, however, part of the adjudged sentence was a dishonorable discharge. In the initial action, the CA approved the sentence and ordered it executed, "except for the ... bad-conduct discharge." *Smith*, 44 M.J. at 789. Thus, the original action contained an ambiguity, which we could not resolve on the record before us. Such is not the case with the appellant's record.

In this case, the Government argues that we should return the record to afford the convening authority the opportunity to correct a clerical error. The Government has cited no cases to us, however, wherein a convening authority has been directed to correct the original action, where the error is due to "administrative oversight," as the CA calls it in his affidavit. Unlike *Smith*, there is nothing "illegal, erroneous, incomplete, or ambiguous" in the original action. *See* R.C.M. 1107(f)(2). Furthermore the analysis to this rule, makes clear that "erroneous" refers to a clerical error. Manual for Courts-Martial, United States (2000 ed.), App. 21, at A21–85. We do not find the attempted correction by the CA's action of 12 July 2000, to address any of the bases on which a corrected action may be taken. In fact, were it not for the CA's affidavit and his attempt to withdraw his initial action, we would be hard pressed to find any issue with regards to the original action. Since the action of 12 July 2000, is a nullity, and since the original action is not incomplete, ambiguous, and it does not contain any clerical error that is in need of correction, we find no reason to return this case for corrective action. We find that the CA's action of 19 May 2000 is *the* action in this case.[3]

**3.** We specifically reject the Government's invitation to return this record to the convening authority to correct what must be an obvious error, arguing that it is readily apparent that a bad-conduct discharge is appropriate in this case. Given the affidavit of the convening authority,

**Conclusion**

Accordingly, we affirm the findings and sentence as approved by the convening authority on 19 May 2000.

Judge VILLEMEZ and Judge OZMUN concur.

however, what is obvious to us is that he, and his legal staff, failed to ensure that important and legally significant post-trial documents were properly prepared. We encourage greater attention to the details of the post-trial processing of cases.