**UNITED STATES, Appellee,**

v.

**Specialist Michael S. GARZA, United States Army, Appellant.**

**ARMY 20030760.**

U.S. Army Court of Criminal Appeals.

23 Sept. 2005.

For Appellant: Colonel Mark Cremin, JA; Lieutenant Colonel Mark Tellitocci, JA; Major Sean S. Park, JA; Captain Michael L. Kanabrocki, JA (on brief and reply brief).

For Appellee: Lieutenant Colonel Mark L. Johnson, JA (on brief); Colonel Steven T. Salata, JA; Major William J. Nelson, JA (on supplemental brief); Colonel Steven T. Salata, JA; Lieutenant Colonel Mark L. Johnson, JA; Major William J. Nelson, JA (on reconsideration and supplemental brief); Lieutenant Colonel Virginia G. Beakes–Read, JA, USAR.

## OPINION OF THE COURT ON RECONSIDERATION

MERCK, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of unlawful entry and indecent assault, in violation of Article 134, Uniform Code of Military Justice, 18 U.S.C. § 934 [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for eighteen months, and reduction to Private E1. Pursuant to a pretrial agreement, the convening authority approved only so much of the adjudged sentence as provides for a bad-conduct discharge, confinement for nine months, and reduction to Private E1. On 16 June 2004, this court set aside the action of the original convening authority and ordered a new staff judge advocate recommendation (SJAR) and action. *United States v. Garza,* ARMY 20030760 (Army Ct.Crim.App. 16 June 2004) (unpub.). Pursuant to Article 66(e), UCMJ, 10 U.S.C. § 866(e), The Judge Advocate General returned the case to a new convening authority with direction to act in accordance with our decision. The convening authority signed a new action on 3 December 2004. The new action did not include any reference to the bad-conduct discharge. The case is before us for further review pursuant to Article 66, UCMJ.

On further review, a panel of this court initially affirmed the approved findings and sentence (which did not include the bad-conduct discharge). *United States v. Garza,* ARMY 20030760 (Army Ct.Crim.App. 18

Mar. 2005) (unpub.). The government requested *en banc* reconsideration of the court's memorandum opinion on further review. On 23 August 2005, this court granted the government's motion for reconsideration *en banc.*

## FACTS

In the SJAR, dated 22 October 2004, the staff judge advocate (SJA) stated:

I recommend you approve only so much of the sentence as provides for a bad-conduct discharge, confinement for nine months, and reduction to private E1. The automatic forfeiture of all pay and allowances required by Article 58b, UCMJ[, 10 U.S.C. § 858b], was deferred effective 12 August 2003 until the date of action, waived effective 12 August 2003 until 21 November 2003, and paid to the accused's spouse. The accused should be credited with 10 days of confinement against the sentence to confinement. The sentence to confinement has been served. An action to accomplish this is located at the signature tab.

The defense submission to the convening authority under Rule for Courts–Martial [hereinafter R.C.M.] 1105, dated 23 November 2004, requested that the convening authority "disapprove the Bad–Conduct Discharge."

The SJA's 3 December 2004 addendum states that the SJA disagrees with the defense request for clemency and adheres to his 22 October 2004 recommendation. The SJA's addendum repeats the same recommendation language as contained within his SJAR and concludes that "[a]n action to accomplish [this recommendation is] located at the signature tab (TAB A)."

The new convening authority's action, dated 3 December 2004, states:

A recommendation having been received pursuant to Rule for Courts–Martial 1106, the following is my action on the record of trial: having considered the Recommendation of the Staff Judge Advocate dated 22 October 2004, the addendum thereto, the Record of Trial, and all matters submitted by defense counsel, only so much of the sentence as provides for confinement for

nine months, and reduction to [P]rivate E1 is approved and will be executed. The automatic forfeiture of all pay and allowances required by Article 58b, UCMJ, was deferred effective 12 August 2003 until the date of action, waived effective 12 August 2003 until 21 November 2003, and paid to the accused's spouse. The accused is credited with 10 days of confinement against the sentence to confinement. The sentence to confinement has been served.

The action was published in General Court–Martial Order Number 218, dated 3 December 2004. The record was again received by this court on 30 December 2004 for further review pursuant to Article 66, UCMJ.

On 12 January 2005, appellate defense counsel filed a "Response to Court Order Dated 11 January 2005 on Behalf of Appellant." In a footnote, appellate defense counsel asserted error in the addendum to the SJAR, but asserted no prejudice "in light of the convening authority's disapproval of the bad-conduct discharge."

On 21 January 2005, appellate government counsel filed a Brief on Behalf of Appellee asserting that the 3 December 2004 action by the convening authority contained a clerical error and that the bad-conduct discharge should be approved. In support of this assertion, appellate government counsel moved to attach to the record an affidavit from the convening authority who took action on appellant's case on 3 December 2004. The affidavit, dated 13 January 2005, stated, *inter alia:*

3.  I was advised by the Staff Judge Advocate to approve only so much of the sentence as provide[s] for a bad[-] conduct discharge, confinement for nine months, and reduction to [Private] E1.

4.  In signing the action in this case, it was my intent to accept the advice of the Staff Judge Advocate and approve only so much of the sentence as provided for a bad[-]conduct discharge, confinement for nine months, and reduction to [Private] E1.

5.  The language pertaining to the bad[-]conduct discharge was inadvertently removed from the action as the result of a clerical error. My intent in signing the

action was to approve every aspect of the punishment in the Staff Judge Advocate's recommendation—including the bad[-]conduct discharge.

Appellant opposed the motion to attach the affidavit to the record, urging this court to disregard the convening authority's affidavit because it is "wholly self-serving and irrelevant" and "unnecessary." . Appellant claims the affidavit is an attempt on the part of the convening authority to modify his previous action. A panel of this court originally denied the government motion to attach the affidavit and affirmed the sentence approved on the face of the action signed by the convening authority. Upon granting the government's motion for reconsideration *en banc,* the court also reconsidered and granted the government's motion to attach the affidavit of the convening authority to the record.

## LAW

Rule for Courts–Martial 1107 provides several avenues for modifying or correcting an action taken by a convening authority. Rule for Courts–Martial 1107(f)(2) defines the circumstances in which the convening authority can modify an action. First, he may "recall and modify [his action] at any time before it has been published or before the accused has been officially notified." R.C.M. 1107(f)(2). Second, he may "recall and modify any action at any time prior to forwarding the record for review, as long as the modification does not result in action less favorable to the accused than the earlier action." *Id.* Third, in the case of a special court-martial, the convening authority can recall and correct "an illegal, erroneous, incomplete, or ambiguous action at any time before completion of review under R.C.M. 1112, as long as the correction does not result in action less favorable to the accused than the earlier action." *Id.* Finally, "[w]hen so directed by a higher reviewing authority or the Judge Advocate General, the convening authority shall modify any incomplete, ambiguous, void, or inaccurate action noted in review of the record of trial under Article 64, 66, 67, or examination of the record of trial under Article 69." *Id.*

While R.C.M. 1107(f)(2) defines the convening authority's ability to change his original action, it is not the only rule that discusses correction of a convening authority's action. Rule for Courts–Martial 1107(g) states:

*Incomplete, ambiguous, or erroneous action*

When the action of the convening or of a higher authority is incomplete, ambiguous, or contains clerical error, the authority who took the incomplete, ambiguous, or erroneous action may be instructed by an authority acting under Article 64, 66, 67, or 69 to withdraw the original action and substitute a corrected action.

Thus, R.C.M. 1107(g) provides a mechanism for appellate authorities to order a convening authority's action to be corrected in appropriate cases.

## DISCUSSION

The convening authority's action in this case is not incomplete, ambiguous, or erroneous on its face. In order to resolve this case, we must address two questions, both of which are issues of first impression in this context. First, can we consider the affidavit of the convening authority as an indication that the convening authority's action was erroneous? Second, even if we consider the affidavit, does the error described by the convening authority come within the scope of R.C.M. 1107(g)?

### Consideration of the Convening Authority's Affidavit

■ Our superior court has recognized "that there are legitimate and salutary reasons for the now-Court of Criminal Appeals to have the discretion to obtain evidence by affidavit, testimony, stipulation, or a factfinding hearing, as it deems appropriate." *United States v. Boone*, 49 M.J. 187, 193 (C.A.A.F.1998). While we are not authorized to " 'determine innocence on the basis of

evidence not presented at trial,' " we do have " 'factfinding powers on collateral claims.' " [1] *Id.* (quoting *United States v. Ginn*, 47 M.J. 236, 242 (C.A.A.F.1997)). Collateral claims are those that do not go "directly to the issue of the guilt or innocence of the accused." *United States v. Fagan*, 59 M.J. 238, 241 (C.A.A.F.2004); *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A.1993). The issue in this case involves the sentence approved by the convening authority and is properly categorized as collateral. As such, we can properly exercise our factfinding powers under Article 66(c), UCMJ.

■ Post-trial affidavits are a typical evidentiary mechanism for addressing questions regarding post-trial issues. Military courts have approved the use of such affidavits in interpreting ambiguities in an action by a convening authority, *United States v. Pineda*, 54 M.J. 298, 299 n. 1 (C.A.A.F.2001), determining whether the convening authority considered all required matters in taking action,[2] and analyzing post-trial assertions of ineffective assistance of counsel. *United States v. Mays*, 33 M.J. 455 (C.M.A.1991). However, these cases did not address whether such affidavits can be considered over defense objection.

A similar question was raised, but not resolved, in *United States v. Robbins*, 61 M.J. 60 (C.A.A.F.2005). In that case, the convening authority's action did not explicitly approve the punitive discharge, but stated that the sentence, "except for the part of the sentence extending to the bad-conduct discharge" would be executed. *Robbins*, 61 M.J. at 60. The government submitted an affidavit from the convening authority to the Navy–Marine Court of Criminal Appeals indicating that the convening authority had intended to approve the discharge. *Id.* at 60–61. In his brief, appellant objected to the

---

1. In the past, this has included the consideration of affidavits submitted by the government to supplement the record on the post-trial processing of a case. For example, military courts have routinely allowed the government to submit an affidavit from the convening authority to supplement the record and meet the requirement that the record demonstrate that the convening authority considered an accused's clemency submission. *See, e.g., United States v. Joseph*, 36

M.J. 846, 850 (A.C.M.R.1993); *United States v. Briscoe*, 56 M.J. 903, 910 (A.F.Ct.Crim.App. 2002); *United States v. Crawford*, 34 M.J. 758, 761 (A.F.C.M.R.1992); *United States v. Godreau*, 31 M.J. 809, 812 (A.F.C.M.R.1990); *United States v. Blanch*, 29 M.J. 672, 673 (A.F.C.M.R.1989).

2. *See, infra,* note 1.

Navy–Marine Court of Criminal Appeals' consideration of the affidavit to resolve the ambiguity in the convening authority's action. *Id.* at 61. In determining whether to consider the affidavit, the service court relied on language in *Pineda,* 54 M.J. at 299 n. 1, in which the Court of Appeals for the Armed Forces considered an affidavit from the convening authority that had been submitted "without appellant's objection" on the same issue. *Id.* (quoting *Pineda,* 54 M.J. at 299 n. 1). The lower court in *Robbins* used the affidavit to resolve the ambiguity and corrected the action based on the convening authority's asserted intent. *Id.*

In Robbins, our superior court found that, because the appellant objected to consideration of the affidavit, the language in *Pineda* did not control the case's resolution. *Id.* Instead, the court found that consideration of the affidavit was unnecessary as the convening authority's action regarding the bad-conduct discharge was ambiguous, so it could be returned for correction under R.C.M. 1107(g). *Id.* The court did not resolve the issue of whether we may consider an affidavit such as the one at issue in this case over defense objection.

We find no authority for allowing one party to prevent relevant facts on the administrative processing of a case from being presented to the court merely by lodging an objection. Instead, our analysis should focus on whether there is a legal basis *underlying* the objection for preventing the consideration of the affidavit. We will look at the proffered reasons for appellant's objection to determine whether we should consider the affidavit in resolving this case.[3]

The defense has asserted that the affidavit is both irrelevant and unnecessary. In the trial context, "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Mil. R. Evid. 401. We find the

same definition useful in the post-trial arena. In this case, the convening authority's affidavit clearly makes it more probable that his action is erroneous in that it does not reflect his true intent in taking action on appellant's case.

The defense assertion that the affidavit is "unnecessary" is another way of saying that there is no facial defect apparent in the action, so no outside evidence is necessary to interpret it. The real question then is whether outside evidence can be used to determine whether an action, which is facially correct, comes within the realm of R.C.M. 1107(g). A useful starting point in resolving the issue is R.C.M. 1107(g) itself. The rule contains three separate situations in which we may return an action for correction to a convening authority. It states, in the disjunctive form, that we may return an action to a convening authority when it is incomplete, ambiguous, or contains clerical error. The plain reading of this rule is that an action need not be incomplete or ambiguous to be erroneous. Put another way, an action that is facially complete and unambiguous may nonetheless be erroneous.

Moreover, there is no requirement that the action be erroneous on its face to come within the scope of R.C.M. 1107. *Compare* R.C.M. 1107(g) *with* R.C.M. 1008 (stating that where a sentence is proper "on its face," it cannot be impeached unless there is evidence of outside or unlawful influence on the sentencing authority). *See also United States v. Johnson,* 29 M.J. 288 (C.M.A.1989) (summary disposition) (finding ambiguity in convening authority's action created by notation in the SJAR). In fact, if an action is complete and unambiguous, it would likely be difficult for us to tell, solely from the action itself, that it is erroneous. As with many post-trial, collateral claims, it is necessary for us to consider evidence outside of the action as an indication that error has occurred. *See generally United States v. Parker,* 36 M.J. 269, 271–72 (C.M.A.1993) (stating that post-trial affidavits play a role in "triggering"

---

3. There are undoubtedly collateral issues on which consideration of a post-trial affidavit would be improper and beyond the scope of our factfinding ability. *See, e.g.,* Military Rule of Evidence [hereinafter Mil. R. Evid.] 606(b) (pre-cluding, with certain exceptions, the use of a court-martial member's affidavit in an inquiry into the validity of the findings or sentence of a court-martial).

further factfinding on an unlawful command interference issue because "'command control is scarcely ever apparent on the face of the record'") (quoting *United States v. DuBay*, 17 U.S.C.M.A. 147, 149, 37 C.M.R. 411, 413, 1967 WL 4276 (1967)).

Our dissenting brother, Senior Judge Barto, places greater emphasis on enforcing the "finality" of the initial action than on allowing the true intent of the convening authority to prevail. We are concerned about the consequences this could impose in future cases, particularly where a convening authority omits an intended clemency measure, such as suspension of a portion of the sentence, from an action. According to Judge Barto's interpretation of R.C.M. 1107, we could not consider any extrinsic evidence of the convening authority's intent to grant clemency.[4] Judge Barto asserts that this court could nonetheless "temper [this requirement] by application of accepted notions of military due process in such a case." We do not share his confidence that an appellant would be so protected if R.C.M. 1107(g) is given the interpretation he advocates.

Our superior court long ago explained the concept of "military due process" by saying:

There are certain standards in the military accusatorial system which have been specifically set by Congress and which we must demand be observed in the trials of military offenses. Some of these are more important than others, but all are of sufficient importance to be a significant part of military law. We conceive these rights to mold into a pattern similar to that developed in federal civilian cases. For lack of a more descriptive phrase, we label the pattern as 'military due process' and then point up the minimum standards which are the framework for this concept and which must be met before the accused can be legally convicted. The Uniform Code of

Military Justice ... contemplates that he be given a fair trial and it commands us to see that the proceedings in the courts below reach that standard.

*United States v. Clay*, 1 C.M.R. 74, 77, 1951 WL 1512 (C.M.A.1951). We are aware of no aspect of military due process which would allow an appellant to introduce evidence to supplement the convening authority's action where the government cannot. As such, we believe the more judicious interpretation of R.C.M. 1107(g) is to allow reviewing courts to retain the discretion to determine when, and under what circumstances, consideration of such evidence is necessary and correct.

Appellant also asserts that the affidavit is an attempt by the convening authority to modify his original action in violation of R.C.M. 1107(f)(2). In his dissenting opinion, Judge Clevenger also makes this assertion, pointing to our superior court's opinion in *United States v. Diaz*, 40 M.J. 335, 345 (C.M.A.1994) where the court stated:

As long as the case remains within the power of the convening authority, he may correct any *administrative* error in the promulgating order or take any *ministerial* action that is appropriate. Once he has taken his action, however, and once that action has been served on the accused or on defense counsel, a convening authority cannot so arbitrarily change his earlier action in some *substantive* way in order to correct a mistake.

*Id.* at 345 (footnote omitted). This argument fails to recognize that R.C.M. 1107 describes several stages at which an action can be modified or corrected.

Rule for Court–Martial 1107(f)(2) provides three situations in which the convening authority can, unilaterally, modify or correct his original action. None of those situations are present in this case. However, the issue we are confronted with is not whether the con-

4. For example, in *Johnson*, 29 M.J. at 288, the SJA and the military judge recommended suspension of the adjudged punitive discharge. The convening authority's action approved the discharge without suspension, but the SJAR contained "a handwritten notation 'OK' [next to the recommendation for suspension] in writing which appear[ed] similar to the initials of the convening authority." Using Judge Barto's anal-

ysis, if the convening authority had intended to suspend the discharge, but had not noted "OK" on the SJAR, we would be unable to consider any outside evidence of the convening authority's intent and the action would have to stand on its own, depriving appellant of the clemency the convening authority intended to bestow upon him.

vening authority can modify his action unilaterally, but whether we can, and indeed should, order such corrective action. Both R.C.M. 1107(f)(2) and 1107(g) recognize that even after a convening authority has lost jurisdiction of a case, he may be ordered to take corrective action by certain reviewing authorities, including this court.

Our superior court implicitly recognized this dichotomy in *Diaz*. While the court held that the convening authority could not unilaterally change his original action after it had been published, the court also acknowledged, "[w]e could, of course, set aside the original action and return the record for a new action, preceded by an SJA recommendation that would correctly inform the convening authority and followed by appellate review under Articles 66, 67, and potentially 67a, UCMJ, 10 USC § 867a." *Diaz*, 40 M.J. at 345. As a result, we find that we can properly consider the affidavit of the convening authority to determine whether this case falls within the scope of R.C.M. 1107(g).[5]

### Determination of Whether the Action is "Erroneous"

It is important to recognize that our superior court has identified two steps in analyzing potential post-trial, collateral issues. The first is the "triggering" process in which an affidavit is submitted that identifies a potential error. *Parker*, 36 M.J. at 272. Once such an error is asserted, it must next be decided how to properly resolve the issue. *See United States v. Ginn*, 47 M.J. 236, 242–43 (C.A.A.F.1997). Because we have determined that we can consider the affidavit to "trigger" further consideration of the issue, we must now decide if we can resolve the question of whether the convening authori-

ty's action was erroneous, within the scope of R.C.M. 1107(g), based solely on the convening authority's affidavit.

We are not permitted to use our factfinding authority under Article 66(c) to decide "disputed questions of fact pertaining to a post-trial claim, solely or in part on the basis of conflicting affidavits submitted by the parties." *United States v. Fagan*, 59 M.J. 238, 242 (C.A.A.F.2004). However, this is not a situation where we are analyzing conflicting affidavits. We have one affidavit, submitted by the convening authority, explaining that he erroneously signed an action which omitted language approving the bad-conduct discharge. Appellant has offered no evidence to dispute this claim.[6] Consequently, we can decide the issue of whether the convening authority's action falls within the realm of R.C.M. 1107(g) based on the record now before us.

Rule for Courts–Martial 1107(g) indicates that an action is "erroneous" when it contains clerical error. The *Manual for Courts–Martial* does not define "clerical error," however, a common meaning for this term has been recognized as "[a]n error resulting from a minor mistake or inadvertence, especially in writing or copying something on the record, and not from judicial reasoning or determination." Black's Law Dictionary 563 (7th ed.). *Cf. United States v. Jones*, 34 M.J. 270, 271 (C.M.A.1992) (stating that error by the military judge in omitting announcing the portion of the adjudged sentence relating to confinement was "of a clerical nature"); *United States v. Baker*, 32 M.J. 290, 293 (C.M.A.1991) (classifying error by the president of the court-martial in failing to

---

5. We have, therefore, reconsidered and reversed the court's prior decision to deny the government's motion to attach the affidavit of the convening authority. We recognize that Rule 17.1 of this court's Internal Rules of Practice and Procedure states that "proceedings" that may be reconsidered *en banc* do not include "interlocutory matters, such as a motion that would not finally dispose of a case." However, pursuant to Rule 25, we find that there is good cause to suspend that restriction under the specific facts of this case.

6. Appellant implies that the convening authority's assertion that he intended to approve the

discharge is untruthful and argues that the action "serves as the best indicator of [the convening authority's] intent at the time he acted on appellant's case." Appellant further asserts that, "[a]lthough it appears that the convening authority, upon reflection, now regrets the decision he made in disapproving appellant's bad-conduct discharge, his affidavit in no way entitles either him or the government to a 're-do.'" We disagree with the implication that the convening authority's affidavit conflicts with his action. Nothing in the action contradicts the convening authority's statement that he mistakenly omitted language approving the discharge.

announce part of the adjudged sentence as "clerical"). *But see United States v. Klein,* 55 M.J. 752, 756 (N.M.Ct.Crim.App.2001) (declining to classify as "clerical error" an error in convening authority's action which was due to "administrative oversight"). Thus, a clerical error is one that results from inadvertence rather than the considered decision of the official authorized to take an action or make a judgment.

Rule for Courts–Martial 1107(b)(1) provides that "[t]he action to be taken on the findings and sentence is within the sole discretion of the convening authority. Determining what action to take on the findings and sentence of a court-martial is a matter of command prerogative." This authority cannot be delegated. R.C.M. 1107(a) discussion. Consequently, clerical error in the context of the convening authority's action means any error that results in an inaccurate reflection of the convening authority's intent.

■ When the action in this case is considered in conjunction with the subsequent affidavit of the convening authority, it is clear that a clerical error has occurred. The convening authority states that he intended to approve the bad-conduct discharge adjudged at appellant's court-martial. Inadvertently, he signed an action that omitted any reference to the discharge. Because this omission was not the result of his considered decision, we find that the action contains a clerical error. As a result, this case falls within the scope of R.C.M. 1107(g) and we may return it to the convening authority so he may withdraw the erroneous action and substitute one that accurately reflects his true intent at the time of his original action.

While we have the authority to return the action to the convening authority under R.C.M. 1107(g), the question remains as to whether we should. We disagree with Judge Barto's assertion that allowing corrective action in this case exceeds our authority because it is contrary to appellant's interest. We do not believe that appellant should receive the benefit of a clerical error that caused a significant part of his sentence to be omitted from the convening authority's action. In fact, R.C.M. 1107(g) specifically provides us with the authority to rectify actions affected by such errors.

Undoubtedly, appellant would be in a better position if we held the government to the erroneous action. However, the only thing appellant loses by corrective action in this case is the unintended bonus he received. Appellant did not have a right to this erroneously awarded windfall and cannot reasonably complain of being deprived of its benefit. Consequently, while a decision to allow corrective action in this case may be construed as contrary to appellant's interest in a broad sense, it is not contrary to any legitimate interest he holds or has any legal entitlement to demand we protect.

Accordingly, the record is returned to The Judge Advocate General of the Army for remand to the same convening authority with directions to withdraw the action dated 3 December 2004. Because of the confusion surrounding the post-trial processing of this case, we direct that a new SJAR be prepared in accordance with Article 60(d), UCMJ, 10 U.S.C. § 860(d), prior to the convening authority taking corrective action in the case. Once the convening authority takes action on the case, he shall then return the record of trial to this court for further review.

Senior Judge SCHENCK, Judge SMITH, Judge JOHNSON, Judge MAHER, Judge OLMSCHEID, Judge HOLDEN, Judge KIRBY, and Judge WALBURN concur.

BARTO, Senior Judge, with whom Judge ZOLPER joins, dissenting.

I reluctantly and respectfully dissent from the learned opinion of the majority in this matter. Under the circumstances of this case, I am not persuaded that this court may receive extrinsic evidence concerning the sentence that the convening authority intended to approve when he took initial action upon the sentence in this matter. It is more judicious to allow an unambiguous initial action by a convening authority to speak for itself. .

We are a court of limited jurisdiction with a unique mandate. *See United States v. Bauerbach,* 55 M.J. 501, 506 (Army Ct.Crim. App.2001). Congress has provided that this

court "may act only with respect to the findings and sentence as approved by the convening authority." Uniform Code of Military Justice art. 66(c), 10 U.S.C. § 66(c) [hereinafter UCMJ]. In this case, the sentence approved by the convening authority was unambiguously stated in his initial action: confinement for nine months and reduction to Private E1. There is no mention of a punitive discharge in the initial action. If the initial action were "incomplete, ambiguous, or contain[ed] clerical error," this court could certainly instruct the convening authority to withdraw the defective action and substitute a corrected one. Rule for Courts-Martial [hereinafter R.C.M.] 1107(g). However, the majority acknowledges that the initial action is neither "incomplete, ambiguous, [nor] erroneous on its face."

To reach the conclusion that there is "clerical error" in the action, the majority permits the use of extrinsic evidence in the form of an affidavit attesting to the convening authority's intent to approve a punitive discharge. Such affidavits have been allowed to supplement the trial record when there is no defense objection, *see United States v. Pineda*, 54 M.J. 298, 299 n. 1 (C.A.A.F.2001), or when the action at issue is facially ambiguous. *United States v. Smith*, 44 M.J. 788, 791 (N.M.Ct.Crim.App.1996) (allowing an affidavit to explain the intent of the convening authority when the initial action contained a reference to a punitive discharge not otherwise approved in the action), *pet. denied*, 48 M.J. 349 (C.A.A.F.1997). However, the instant facts are readily distinguishable from such cases because appellant has objected to the consideration of the convening authority's affidavit, and—most significantly—the initial action is unambiguous containing absolutely no reference to a punitive discharge. *Cf. United States v. Robbins*, 61 M.J. 60 (C.A.A.F.2005) (holding an initial action ambiguous where that action referred to a punitive discharge that had not been approved by the convening authority).

The majority nevertheless attempts to justify its use of the affidavit by an appeal to necessity. Their opinion states, "In fact, if an action is complete and unambiguous, it would likely be difficult for us to tell, solely from the action itself, that it is erroneous." I respectfully submit that my colleagues underestimate our ability to discern error: obvious errors that could be discovered without recourse to affidavits include, but are certainly not limited to, the identity of the person on whom the sentence was imposed, appellant's unit of assignment, or the purported approval of a sentence in excess of the jurisdictional limit of the court that imposed it. Moreover, we may always look at the "entire record" in determining whether the findings and sentence are correct in law and fact and should be approved. UCMJ art. 66(c). Many errors and omissions in the initial action should be readily discernable by reference to the staff judge advocate's recommendation, the addendum, or other documents in or attached to the record of trial without the need for affidavits. The fact that the affidavit at issue is the only evidence of error establishes its relevance to the issue under consideration but not necessarily its admissibility before this court.

Significantly, the majority does not cite (and I am unaware of) any precedent directly on point that extends the use of post-trial affidavits to supply allegedly omitted portions of a facially unambiguous initial action. There may be good reason for this paucity of precedent. "As a general rule, what ought to be of public record must be proved by the record and cannot be contradicted or enlarged by parol evidence." 29A Am.Jur.2d Evidence § 1104 (2004). Records of formal official action, records of public officers, records of judgments, and "acts of a court of record are also known by its records and cannot be established by parol evidence." *Id.* In the absence of "a distinct ambiguity apparent on the face of a public document or record, no extrinsic matter can be considered." *Id.* As the President requires a convening authority to reduce to writing his decision as to the sentence imposed at a court-martial and insert the document in the record of trial, R.C.M. 1107(f)(1), it would appear that the initial action by the convening authority is the type of record the contents of which must be proven by the express words of the written action itself.

Even if we do not apply the parol-evidence rule as such to the instant facts, the statutory and regulatory emphasis on the finality of the initial action by the convening authority provides a substantial reason for disregarding this convening authority's effort to impeach by post-action affidavit his own unambiguous action. Publication of an unambiguous promulgating order is akin to the announcement of sentence during trial in that it establishes a benchmark beyond which the sentence may not be thereafter increased.[1] After publication, "[t]he convening authority may ... recall and modify any action at any time prior to forwarding the record for review, *as long as the modification does not result in action less favorable to the accused than the earlier action.*" R.C.M. 1107(f)(2) (emphasis added); *cf.* UCMJ art. 60(e)(2)(C) (prohibiting proceeding in revision from increasing the severity of any portion of the adjudged sentence). Similarly, this court may order the withdrawal and correction of an initial action only when that action is "incomplete, ambiguous, or contains clerical error." R.C.M. 1107(g). Our sister service court has held that "clerical error" does not include "administrative oversight" such as signing an initial action that includes language suspending a punitive discharge when no such suspension was intended. *United States v. Klein,* 55 M.J. 752, 756 (N.M.Ct.Crim.App.2001). The reason for such a rule is clear: "[w]henever it is possible to 'correct' court-martial sentences upward after adjournment, that spectre [of unlawful command influence] will arise." *Baker,* 32 M.J. at 293.

The same rule should apply when the administrative oversight by the convening authority involves, as it does here, signing an initial action and issuing a promulgating order that omit any mention of the punitive discharge adjudged at trial. Under the instant facts, excluding the affidavit at issue respects the finality provided by the twice-published initial action and avoids raising the spectre that the convening authority increased the sentence because of unlawful command influence. Moreover, such a ruling may inspire closer attention to detail on the part of those who prepare initial actions and promulgating orders as well as those who sign them. *See Klein,* 55 M.J. at 756 n. 3 ("Given the affidavit of the convening authority, however, what is obvious to us is that he, and his legal staff, failed to ensure that important and legally significant post-trial documents were properly prepared. We encourage greater attention to the details of the post-trial processing of cases.").[2]

Aggravating this situation is the reality that "[t]he actual limits of the fact-finding powers of the Courts of Criminal Appeals ... are unclear." 2 Francis A. Gilligan & Fredric I. Lederer, *Court–Martial Procedure* § 25–53.20 (1999). This lack of clarity stems from the fact that "Article 66(c) does not ... expressly provide for the appellate resolution of collateral claims not raised at the court-martial." *United States v. Dykes,* 38 M.J. 270, 272 (C.M.A.1993) (citing *United States v. DuBay,* 17 U.S.C.M.A. 147, 149 n. 2, 37 C.M.R. 411, 413 n. 2, 1967 WL 4276 (1967)). Despite the prolonged existence of this ambiguity, neither Congress nor the President has promulgated rules of evidence or procedure by which collateral issues might be resolved by military appellate courts.[3] In

---

1. *See* R.C.M. 1007 and *United States v. Baker,* 32 M.J. 290 (C.M.A.1991) (holding that after a court-martial has announced the sentence and adjourned, the sentence cannot be increased upon reassembly).

2. I also encourage specificity on the part of those who prepare affidavits for appellate litigation. In the affidavit relied upon by the majority, the convening authority stated the following, "The language pertaining to the bad conduct discharge was inadvertently removed from the action as a result of clerical error." I share Judge Clevenger's concern about the ambiguous nature of this statement. Such a statement is no more helpful than the bald assertion that "mistakes

were made." Even if I were to accede to the use of affidavits to impeach an otherwise unambiguous initial action, I would find such assertions to be unhelpful and unpersuasive.

3. *Cf. United States v. Walters,* 45 M.J. 165, 167 (C.A.A.F.1996) (Cox, J., concurring in the result) (renewing prior recommendation to Joint Service Committee on Military Justice to "consider and recommend" such rules to the President); H.F. "Sparky" Gierke, *Five Questions About The Military Justice System,* 56 A.F. L.Rev. 249, 255 (2005) (inquiring whether the current cobbled-together system for adjudicating collateral issues should be replaced with a more formal system

the absence of such rules, military appellate courts are forced to speculate as to which constraints, if any, guide their ability to supplement the record of trial on appeal and resolve issues thereby raised. *Cf. United States v. Healy,* 26 M.J. 394, 396–97 (C.M.A. 1988) (Everett, C.J.) (inferring from silence of UCMJ that "Congress never intended that a Court of Military Review would be under any duty to receive additional information on sentencing after the convening authority had acted."). Until such rules are promulgated, piecemeal adjudication and ad hoc judicial rulemaking will be the predictable result.

In the face of such uncertainty, it is prudent to recall the observations of the late Judge Wiss in his separate opinion in *United States v. Parker,* 36 M.J. 269 (C.M.A.1993):

> Even a court with "awesome, plenary, *de novo* power of review" and with *"carte blanche* to do justice" is not unrestricted. No court is free to act beyond the perimeter of its legal mandate, whether acting on behalf of an individual accused or on behalf of the people through the prosecution. There are *some* places where even "the proverbial 800–pound gorilla" is not free to roam.

akin to that established by statute for federal civilian prisoners).

4. Military justice managers at all levels would do well to heed the admonition of our sister court issued under similar circumstances: "[W]ords very often have rather precise meanings and consequences. The failure to carefully craft the appropriate language and to proofread legal documents does an enormous disservice to the client being served and wastes scarce resources in the rework required to correct defects." *Smith,* 44 M.J. at 791.

5. As to any purported "windfall" accruing to appellant, it is also useful to recall the following discussion from a decision of our Supreme Court:

> There are those who say, as did Justice (then Judge) Cardozo, that under our constitutional exclusionary doctrine "the criminal is to go free because the constable has blundered." In some cases this will undoubtedly be the result. But, as was said in *Elkins,* "there is another consideration—the imperative of judicial integrity." The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence.

*Id.* at 273 (Wiss, J., concurring in part and in the result) (citation omitted). Congress did not create this court to backstop convening authorities and their staff judge advocates; to the contrary, our superior court has long held that the actions of the intermediate service courts are "always taken on behalf of an accused and in his interest." *United States v. Zimmerman,* 2 U.S.C.M.A. 12, 20, 6 C.M.R. 12, 20, 1952 WL 2267 (1952). We are least "free to roam" when we purport to act on behalf of a convening authority who has already had the advice and assistance of a staff judge advocate who, in turn, was very likely to have prepared the initial action at issue.[4] The fact that a culpable appellant may benefit from the mistake of a convening authority is not a sufficient reason to evade our mandate.[5] As such, I cannot join an opinion that strains so mightily against "an accused and ... his interest" without the express support of statute, rule, or precedent allowing the convening authority to impeach his own record of action with parol evidence.[6] I would not consider extrinsic evidence of the convening authority's intent under the instant facts,[7] and I would affirm the sentence

*Mapp v. Ohio,* 367 U.S. 643, 659, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (citations and footnote omitted). The military justice system has even codified its tolerance for such "windfalls." *See, e.g.,* Military Rule of Evidence (Mil. R. Evid.) 305(a) (excluding statements obtained without certain warnings); Mil. R. Evid. 311(a) (excluding evidence obtained by unlawful search and seizure). Moreover, it begs the question at issue to characterize the disapproved punitive discharge as a "windfall" or "undeserved benefit."

6. As the Fifth Circuit has recently observed in an unrelated matter, "[t]he Government can not use the appellate courts to reconstruct a new record for its losing case." *United States v. Reasor,* 418 F.3d 466 (5th Cir.2005).

7. I am mindful that strict application of the parol-evidence rule could theoretically prevent us in some future case from receiving an affidavit from a convening authority asserting an intent to provide clemency to an appellant which clemency was inadvertently omitted in the initial action on the sentence. This situation is not before the court, but I am confident that we could temper the demands of the parol-evidence rule by application of accepted notions of military due process in such a case, consistent with our mandate to act on behalf of appellant and in his interest. *Cf. Baker,* 32 M.J. at 293 (observing that a rule

expressly approved by the convening authority in this matter: nine months confinement and reduction to Private E1.[8]

CLEVENGER, Judge, dissenting.

I join Senior Judge Barto in his dissent, but write separately to describe more fully my concerns in view of the majority's disposition of this case.

Appellate counsel for the government offered by motion an affidavit from the convening authority, dated 13 January 2005, in which the convening authority states that his action, not approving the adjudged bad-conduct discharge, was the result of a "clerical error," and the government prays for a remand order to allow the error to be corrected. Appellant's counsel oppose granting the motion and the requested relief, citing Rule for Courts–Martial [hereinafter R.C.M.] 1107(f)(2).[1]

I would deny the government's motion to attach the convening authority's affidavit to the record. I disagree with the majority's analysis that the convening authority's action on the sentence is a collateral matter. The majority wrongly characterizes the convening authority's initial promulgating action as part of the "administrative processing of a case." In this regard their reliance on *United States v. Parker*, 36 M.J. 269 (C.M.A.1993) is misplaced. The case is totally inapposite and deals with affidavits addressing substantive factual matters, not a subjective decision

within the sole discretion of a convening authority to make when the convening authority is signing an action prepared by a staff judge advocate (SJA) or legal officer. The convening authority's initial promulgating action is the *sine qua non* of a court-martial conviction. Everything from preferral of charges through the end of the trial proceedings and the statutory post-trial review requirement is inchoate until action is taken. We may leave for another day the vexing fact that most court-martialed soldiers have actually completely served their adjudged terms of confinement and had any adjudged forfeitures and reductions in grade fully executed before the convening authority takes an initial promulgating action in the current court-martial era. But by their present opinion, the majority of this court now exempts the convening authority from even the "time-line" or "tunnel of power" limitations described by our superior court in *United States v. Diaz*, 40 M.J. 335, 344–45 (C.M.A. 1994). Simply by asserting an original intent different than that clearly, completely, and unambiguously expressed in the signed action, a convening authority may apparently reverse the judgment of higher reviewing authorities at any time adversely to an appellant.

The proffered affidavit only attempts to show an error in the record where no other evidence of the purported error otherwise exists. The convening authority asserts in

that "can operate only to the detriment of the prosecution" is nevertheless necessary because "it assures the integrity of the proceedings and eliminates even the remote possibility of abuse."). Alternatively, such an appellant could present such information to the Secretary of the Army, the Army Clemency and Parole Board, or the appropriate convening authority for clemency action under Article 74, UCMJ, 10 U.S.C. § 874. *See* Army Reg. 15–130, Boards, Commissions, and Committees: Army Clemency and Parole Board, para. 3–1 (23 Oct. 1998).

8. I also join Judge Clevenger's dissent to the extent that his opinion may be interpreted as saying that a convening authority loses any ability to supplement an unambiguous action after forwarding the record for review.

1. The full text of the rule is:

The convening authority may recall and modify any action taken by that convening authority at

any time before it has been published or before the accused has been officially notified. The convening authority may also recall and modify any action at any time prior to forwarding the record for review, as long as the modification does not result in action less favorable to the accused than the earlier action. In addition, in any special court-martial, the convening authority may recall and correct an illegal, erroneous, incomplete, or ambiguous action at any time before completion of review under R.C.M. 1112, as long as the correction does not result in action less favorable to the accused than the earlier action. When so directed by a higher reviewing authority or the Judge Advocate General, the convening authority shall modify any incomplete, ambiguous, void, or inaccurate action **noted in review of the record of trial** under Article 64, 66, 67, or examination of the record of trial under Article 69. The convening authority shall personally sign any supplementary or corrective action.
(Emphasis supplied).

his affidavit that "[t]he language pertaining to the bad [-] conduct discharge was inadvertently removed from the action as the result of a clerical error." The assertion raises multiple questions. How does the convening authority know this? How was the language removed and by whom? It seems highly unlikely that the convening authority personally prepared a draft of his desired action, so what specific "action" is the convening authority referring to? Was there a previous action prepared which the convening authority saw that did contain the necessary words for approval of the adjudged punitive discharge? What happened to it? Why was it changed? Was it a signed action too? Is the convening authority merely repeating hearsay from some anonymous source in his affidavit?

In their footnote 6, the majority elects to "disagree with the implication that the convening authority's affidavit conflicts with his action." But as the personally signed action makes no mention of the adjudged punitive discharge, and the later-in-time affidavit asserts an intention to approve the adjudged punitive discharge, the "conflict" is obvious, not implied. Furthermore, even if, as the majority asserts in their footnote 6, "[n]othing in the action contradicts the convening authority's statement that he mistakenly omitted language approving the discharge" that is hardly significant. Logic would seemingly preclude such an assertion in an action.[2]

The SJA's post-trial recommendation (SJAR) and its addendum in this case also are not reliable guides to establish that the convening authority's intent was contrary to the plain text of the action signed by the convening authority. The convening authority did not sign a separate memorandum, as we often see, stating his intent to approve the recommendation of the SJA at the time he took action. Convening authorities are not required to explain why they choose not to follow an SJA's recommendation to either grant or deny clemency.[3] And, the addendum to the SJAR in this case contains a sufficient number of mistakes to make a convening authority leery of relying on the drafted action to correctly provide the desired result.[4]

The publication of General Court–Martial Order Number 218 on 3 December 2004, with its distribution to appellant and appellant's defense counsel at the Fort Knox Trial Defense Service offices, terminated the convening authority's power to "recall and modify" his action. *See* R.C.M. 1107(f)(2); *United States v. Shulthise*, 14 U.S.C.M.A. 31, 33, 33 C.M.R. 243, 244–45, 1963 WL 4844 (1963) ("Forwarding the case for review ... is equivalent to publication and the sentence finally fixed by the reviewing authority may not, whatever course the proceedings thereafter take, be exceeded.") (citation omitted) (discussing the 1969 *Manual for Courts–Martial* provision in para. 89*b* that is the basis for R.C.M. 1107(f)(2)). In describing the purpose of the rule our superior court

2. Perhaps, as seen in some works of fiction, the majority wants convening authorities to insert a disclaimer in their actions saying words to the effect of "any errors in this action are entirely my responsibility."

3. I note that the action correctly recites the history of the case and states:

A new staff judge advocate's post-trial recommendation and action were ordered. A recommendation having been received pursuant to Rule for Courts–Martial 1106, the following is my action on the record of trial: having considered the Recommendation of the Staff Judge Advocate dated 22 October 2004, the addendum thereto, the Record of Trial, and all matters submitted by defense counsel, only so much of the sentence as provides for confinement for nine months, and reduction to [P]rivate E1 is approved and will be executed.

This language shows the convening authority did consider all the required matters but not that any particular recommendation or request was viewed favorably.

4. For example, the addendum refers to the case as a special court-martial in paragraph 1. The SJA recommends approving the adjudged punitive discharge, but in paragraph 3 the addendum closes by asserting, ungrammatically, "An action to accomplish this located at the signature tab (Tab A)." And yet, if the drafted document at Tab A was what the convening authority signed, it did not accomplish that recommended outcome. Finally, the addendum says it has "3 Encls" but immediately lists four numbered, enclosed documents below that. And, the number 1 document, Tab A, is described as an "Action Memo" and not even as a proposed or draft action.

noted: "[The rule was] designed to 'give some degree of stability to the action of the convening authority and to insure that he will not modify his action pending appellate review....'" *Shulthise*, 14 U.S.C.M.A. at 33, 33 C.M.R. at 245 (quoting LEGAL AND LEGISLATIVE BASIS, MANUAL FOR COURTS-MARTIAL, UNITED STATES 128 (1951)). Under the circumstances of this case, the extensive omission from the action that would need to be "corrected" to approve a bad-conduct discharge and then except it from being executed is not properly characterized as "clerical error" under R.C.M. 1107(g).[5]

In *United States v. Diaz*, our superior court clearly explained the law related to this issue.

> As long as the case remains within the power of the convening authority, he may correct any *administrative* error in the promulgating order or take any *ministerial* action that is appropriate. Once he has taken his action, however, and once that action has been served on the accused or on defense counsel, a convening authority cannot so arbitrarily change his earlier action in some *substantive* way in order to correct a mistake.

40 M.J. 335, 345 (C.M.A.1994) (footnote omitted). That is exactly the circumstance we have here.

Rule for Courts-Martial 1107(f)(2) authorizes but does not require this court, as a "higher reviewing authority," to remand the case for the convening authority to modify an action that is "incomplete, ambiguous, void or inaccurate." But here the signed action is none of these. It is not incomplete on its face. It is not ambiguous on its face.[6] There is nothing about the signed action that makes it legally void. And, it is not inaccurate on its face. On its face, the action in appellant's case reads as if the convening authority granted the specific clemency requested by appellant in his submission pursuant to R.C.M. 1105 and 1106. The action contains no reference to a punitive discharge at all. *See, e.g., United States v. Schiaffo*, 43 M.J. 835 (Army Ct.Crim.App.1996). Thus there is no basis upon which this court as a higher reviewing authority, or the Judge Advocate General, may instruct or direct corrective action.

In this regard we should revisit what our court said in *United States v. Foster*, 40 M.J. 552, 553 (A.C.M.R.1994):

> We further note that the error in this case, while attributed to the convening authority, was not committed by the convening authority. The staff judge advocate bears the responsibility to ensure that convening authority actions are complete and correctly stated. The error in the original action is directly attributed to the staff judge advocate's office and not personally to the convening authority. This court continues to see too many careless errors committed by legal personnel. We have urged ad nauseam that staff judge advocates and other legal personnel pay attention to detail and ensure correctness of legal documents, particularly court-martial documents. It may be time for more drastic action to ensure that legal actions are done correctly.

And so, contrary to the majority, I think that it is that time for this case.

I would not admit the proffered affidavit and would affirm the findings of guilty and only so much of the sentence as provides for confinement for nine months and reduction

---

**5.** The majority would add "inadvertence" to the list of the sources of errors correctable by convening authorities or by direction of this court. The fundamental problem with this approach is that unlike deficiencies apparent on the face of the action or at the very least appearing in the record of trial, deficiencies predicated on inadvertence are not objectively reviewable.

**6.** I think that in every case where an "ambiguous" action has been returned to the convening authority for correction, there has been a facial ambiguity, such as the classic error of failing to include the adjudged punitive discharge in the approved portion of the sentence, but ordering the approved sentence executed "except for" the punitive discharge. When that, or similar language, is included, it certainly shows an ambiguity by suggesting the present intent to approve the punitive discharge. Even in *United States v. Johnson*, 29 M.J. 288 (C.M.A.1989) (summary disposition), cited by the majority, the source of the correctable ambiguity was in the record as a handwritten note on the post-trial recommendation which is a required part of a record of trial. R.C.M. 1103(b)(3)(G).

to the grade of Private E1, as approved in the action signed by the convening authority on 3 December 2004.